**UNITED STATES v. 48.9 ACRES OF LAND IN PIKE COUNTY, ARK., et al.**

**UNITED STATES v. 1,907.48 ACRES OF LAND IN PIKE COUNTY, ARK., et al.**

**UNITED STATES v. 2,350.2 ACRES, MORE OR LESS, IN PIKE COUNTY, ARK., et al.**

**Civ. Nos. 374, 391, 399.**

United States District Court
W. D. Arkansas, Hot Springs Division.

June 22, 1949.

Tom Kidd, Murfreesboro, Ark., for Murfreesboro Lumber Co.

J. W. House, Little Rock, Ark., John Glenn, Mena, Ark., for Mac-Kan Mercury Co., Southwestern Quicksilver Co., and R. B. Carroll.

Witt & Witt, Mt. Ida, Ark., Shaver, Stewart & Jones, Texarkana, Ark., for M. E. Cox and the Cox children.

JOHN E. MILLER, District Judge.

1. On May 10, 1949, by agreement of the parties involved, the above Civil Action No. 374 as to Tract No. 16, and Civil Action No. 391 as to Tract No. 14 and Civil Action No. 399 as to Tract No. 8 were consolidated by order of the Court for the purpose of determining the question of title of the said three tracts existing between the contending claimants.

On August 13, 1948, Civil Action No. 374 was filed for the purpose of acquiring the title to the lands therein described, which includes the SW¼ of the NE¼ of Section 4, Township 7 South, Range 25 West, in Pike County, Arkansas, containing 39.9 acres, more or less, and being designated as Tract No. 16.

On the same date and upon the filing of the Declaration of Taking, the Court entered an order vesting the title of the land in the United States of America, the plaintiff having deposited a sum of money representing, in its opinion, just compensation for the land.

The Petition and the Declaration of Taking designated Murfreesboro Lumber Company as the owner. On January 28, 1949, the defendants—Crown Cox and Mattie Cox, his wife; Dossie Cox and Alma Cox, his wife; Gertrude Cox Rains; Verdis Cox and Lois Cox, his wife; Pauline Cox Robbins; Flora Cox; Eugene Cox and Bessie Cox, his wife; Flora Cox, as guardian of her minor children, C. B. Cox, Jr., Huey Cox and Buster Cox; Roy Cox; Ruthie Cox Priddy; Mittie Cox Jones; Bertha Carter Cox; Nila Cox; Floyce Cox; Bertha Carter Cox, as guardian of her minor children, Juanita Cox, Irene Cox and Fern Cox; Retha Cox Keltgen; Art Cox and Alberta Cox, his wife; and Lillie Young—filed their answer denying that the amount deposited by the plaintiff was just compensation for the lands taken and alleging that they are the owners in fee of the land, Tract No. 16, subject to an estate for the life of Mrs. M. E. Cox, which life estate is vested in the defendants who compose the partnership doing business under the firm name of Murfreesboro Lumber Company.

They further alleged that on January 19, 1911, Charles T. Erwin and his wife, S. J. Erwin, were the owners of said land and on said date executed, acknowledged and delivered their warranty deed conveying the land to "A. J. Cox and M. E. Cox and unto their heirs only forever;" that under the terms of said deed A. J. Cox and his wife, M. E. Cox, became vested of an estate by the entirety for the life of the survivor, who is Mrs. M. E. Cox, her husband having died on November 29, 1947; that under and by virtue of said deed a fee estate in remainder was created and is now claimed and owned by the children of the said A. J. Cox and his wife, Mrs. M. E. Cox, born at the time of the execution of said deed and those born to them subsequently but during the existence of said marital relationship and the lineal descendants of said children as have died.

The deed referred to recites:

"That we, Charles T. Erwin and S. J. Erwin, his wife, for and in consideration of the sum of One Thousand Five Hundred ($1,500.00) Dollars to us paid by A. J. Cox, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell and convey unto the said A. J. Cox and M. E. Cox and unto their heirs only forever, the following lands lying in the County of Pike and State of Arkansas, to-wit:

"W½ of NE¼; E½ of NW¼; SW¼ of NW¼ and NW¼ of SW¼ of Sec. 4 and SE¼ of NE¼ of Sec. 5, and SW¼ of SW¼ of Sec. 6, and NE¼ of NW¼ Sec. 7, and also all that part of Lots (2) Two

and (3) Three of NW¼ of Sec. 7, lying East of the Little Missouri River. All above land in Township 7 S. R. 25 West, containing 400 acres, more or less. (Except the pine timber heretofore sold to Ft. Smith Gurdon Land and Timber Co.)

"To have and to hold the same unto the said A. J. Cox and M. E. Cox and unto their heirs only forever, with all appurtenances thereunto belonging.

"And we hereby covenant with said A. J. Cox and M. E. Cox and their heirs only that we will forever warrant and defend the title to the said lands against all claims whatever.

"And I, S. J. Erwin, wife of the said Charles T. Erwin, for and in consideration of the said sum of money, do hereby release and relinquish unto the said A. J. Cox and M. E. Cox and their heirs only all my right of dower and homestead in and to the said lands."

On February 7, 1949, the defendants J. W. Anthony, Margaret B. Anthony, in her own right and as wife of J. W. Anthony; Clarence Anthony and Bennie Sue Anthony, his wife; Roy Anthony and Eudie Anthony, his wife, a co-partnership doing business as the Murfreesboro Lumber Company, filed their answer in which they denied that the title to the lands involved, Tract No. 16, or any part thereof is vested in the co-defendants, Crown Cox, et al., and said defendants plead that by the terms of said deed executed by the said Charles T. Erwin and wife on January 19, 1911, to A. J. Cox and M. E. Cox and unto their heirs only forever that the said A. J. Cox and wife, M. E. Cox, became vested of an estate by the entirety in fee simple and to their heirs and assigns.

The said defendants deraigned their claim of title to the said lands, Tract No. 16, by mesne conveyances from the said A. J. Cox and wife, M. E. Cox, and pray that they be declared the owners of said land, Tract No. 16, as against their co-defendants, Crown Cox, et al.

The defendants further plead that on October 22, 1932, their co-defendants, M. E. Cox, et al., filed an action in the Pike Chancery Court against Albert Schaefer and Annie Schaefer, et al., in which they prayed that the court cancel, set aside and forever hold for naught the deed that had been executed by A. J. Cox and wife, M. E. Cox, to the said Albert Schaefer, conveying the lands involved in Civil Action No. 374, Tract No. 16, and that on January 5, 1933, the said Pike Chancery Court sustained a demurrer to the complaint and dismissed the same.

That the answer of the co-defendants, Crown Cox, et al., should be stricken from the file and the partnership doing business as the Murfreesboro Lumber Company should be declared to be the owners of said Tract No. 16.

2. Civil Action No. 391 was filed on January 11, 1949, by which the United States of America sought to obtain by condemnation title to various tracts of land including Tract No. 14.

Tract No. 14 embraces the following described lands included in the said deed from Charles T. Erwin and wife, S. J. Erwin, to A. J. Cox and M. E. Cox, executed January 19, 1911, to-wit:

NW¼ of NE¼; NE¼ of NW¼; S½ of NW¼, and NW¼ of SW¼ of Section 4, the SE¼ of NE¼ of Section 5, all in Township 7 North, Range 25 West, in Pike County, Arkansas.

On March 14, 1949, Mrs. M. E. Cox and the heirs of A. J. Cox, deceased, filed their answer containing substantially the same allegations as their answer that was filed in Civil Action No. 374 and praying that they have judgment against the United States for the cash market value of the lands, Tract No. 14.

On May 17, 1949, Declaration of Taking was filed and on said date a sum of money was deposited by the United States of America sufficient, in its opinion, to pay just compensation for the land described in the complaint or petition heretofore referred to, and on May 18, 1949, a judgment was entered vesting title to the lands, including Tract No. 14, in the United States of America.

At a pre-trial conference on May, 10, 1949, at Hot Springs the Mac-Kan Mercury Company, a corporation, was granted

permission to file an intervention and motion to strike the answer of the defendants, M. E. Cox, et al., which intervention and motion to strike was filed on that date and appears in Civil Action No. 374 which, as heretofore stated, was consolidated with Civil Actions Nos. 391 and 399.

In the intervention and motion to strike of the Mac-Kan Mercury Company, a corporation, it is alleged that it is the owner of the land embraced in Tract No. 14 and that the deed executed by Charles T. Erwin and wife, S. J. Erwin, to A. J. Cox and M. E. Cox on January 19, 1911, conveyed a fee simple title to the said A. J. Cox and M. E. Cox and that by reason thereof the defendants, M. E. Cox, et al., have no interest whatsoever in the lands included in Tract No. 14 involved herein.

The said defendant, Mac-Kan Mercury Company, a corporation, also pleads the proceedings in the Pike Chancery Court heretofore referred to in the statement of the issues in Civil Action No. 374.

This defendant further alleges that its co-defendants, M. E. Cox, et al., have been guilty of laches and are stopped from claiming title to the lands involved herein and that they are also barred by the statute of limitations and by the decree of the Chancery Court of Pike County hereinbefore referred to. The prayer of the intervention and motion to strike is that the answer of M. E. Cox, et al., be stricken.

3. Civil Action No. 399 was filed on March 16, 1949, for the purpose of acquiring the title by condemnation of certain lands including Tract No. 8, which embraces Lots 2 and 3 of the NW¼ of Section 7, Township 7 North, Range 25 West, in Pike County, Arkansas, that was conveyed to A. J. Cox and M. E. Cox by the said Charles T. Erwin and wife, S. J. Erwin, on January 19, 1911.

A Declaration of Taking was filed and on March 16, 1949, the Court entered a judgment vesting the title in the United States of America of the land described in the Petition and Declaration of Taking which, as above stated, includes Tract No. 8.

Mrs. M. E. Cox nor any of the heirs of A. J. Cox and M. E. Cox have answered in this action, Civil Action No. 399, presumably because of the lack of service of summons or other process. However, R. B. Carroll, as an individual, and R. B. Carroll, as Administrator of the Estate of D. L. Parnell, and the Southwestern Quicksilver Company, a corporation, have filed their intervention and motion alleging that they are the owners of the land, improvements and minerals in and on the land embraced in Tract No. 8, 80 acres of which was included in the Erwin deed to A. J. and M. E. Cox; and, therefore, if these interveners be held to be the owners of that portion of Tract No. 8 that was included in the Erwin deed, while not binding or conclusive as against M. E. Cox and the heirs of A. J. and M. E. Cox yet such finding would be highly persuasive in disposing of any claim that might subsequently be made by them.

At the request of the Court the defendants, M. E. Cox, et al., have filed briefs and arguments in support of their contentions, as have the Murfreesboro Lumber Company, the Mac-Kan Mercury Company, a corporation, R. B. Carroll and R. B. Carroll, as Administrator, and the Southwestern Quicksilver Company which briefs and arguments, together with the exhibits thereto consisting of copies of the various deeds and the pleadings and decree of the Pike Chancery Court in the case hereinbefore referred to and the divorce decree in the case of A. J. Cox vs. M. E. Cox, have been fully considered.

## Discussion

The common source of the title, whatever it be, of all claimants in the instant case was the deed of January 19, 1911, whereby Charles T. Erwin and his wife, S. J. Erwin, conveyed the land to "A. J. Cox and M. E. Cox and unto their heirs only forever."

As the Court understands the contention of M. E. Cox and the Cox children, it is that the effect of this conveyance at common law would have been the creation of a fee tail estate by the entirety in A. J. and M. E. Cox, but by virtue of Arkansas Statutes, 1947, 50-405, the conveyance created a life estate by the entirety in A. J. and M. E. Cox with re-

mainder to pass in fee simple to the bodily heirs of A. J. and M. E. Cox.

The other claimants, who will be dealt with specifically hereafter, contend that the conveyance passed a fee simple absolute estate by the entirety to A. J. and M. E. Cox.

■ On the interpretation of the terms of the deed the intention of the parties, if ascertainable, governs. Carter Oil Co. v. Weil, 209 Ark. 653, 192 S.W.2d 215. In this connection Arkansas Statutes, 1947, 50-403 provides: "The term or word 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple, but all deeds shall be construed to convey a complete estate of inheritance in fee simple, unless expressly limited by appropriate words in such deed."

The Court is of the opinion that the rule in Shelley's case has nothing to do with the limitation in the Erwin deed. That rule is stated comprehensively in Restatement of the Law of Property, Section 312, as follows:

"(1) When an otherwise effective conveyance of land limits an estate for life to a person (hereinafter called the ancestor) and the same conveyance also limits a remainder, either mediately or immediately, to the heirs or to the heirs of the body of the ancestor, and the estate for life and such remainder are both legal or both equitable, then, except when the estate for life is subject to a condition precedent which does not also attach to the remainder, the conveyance creates a remainder in the ancestor and the words describing the heirs or the heirs of the body are words of limitation determining the type of his estate in remainder.

"(2) The estate for life in the ancestor and the remainder in the ancestor which results from the operation of the rule stated in Subsection (1) merge unless there is an intervening estate or unless the remainder in the ancestor is subject to a' condition precedent to which his estate for life is not subject."

As stated in Comment (1) under Section 312, the operation of that section is as follows:

"When the various requirements for the application of the rule stated in Subsection (1) are satisfied, the effect is the same as if the remainder had been limited to the designated ancestor. The extent of interest thus received by the ancestor depends on the form of the limitation of the remainder. If the remainder is to his heirs, he has a remainder in fee simple. If the remainder is to the heirs of his body, general or special, he has a remainder in fee tail, general or special * * *.

"The rule stated in Subsection (1) operates only to convert what appears to be a remainder in the heirs or the heirs of the body of the designated ancestor into a remainder in the ancestor himself. After the rule stated in Subsection (1) has operated, however, another and different doctrine may apply to the resultant interests and bring about a further change in the effect of the conveyance. The additional doctrine is the rule stated in Subsection (2) and is the doctrine of merger. The estate for life in the ancestor and the remainder in the ancestor which results from the operation of the rule stated in Subsection (1) merge * * *."

■ In other words, simply stated, when a conveyance limits a life estate to A with remainder to his heirs or the heirs of his body, the rule operates to give A an estate in fee simple absolute or fee tail. However, the estate fee tail has been abolished in Arkansas and under Arkansas Statutes, 1947, 50-405, such an estate is now a life estate in the first taker. See, for Arkansas cases on the subject: Hardage v. Stroope, 58 Ark. 303, 24 S.W. 490; Shields v. Shields, 179 Ark. 167, 14 S.W.2d 545; Gray, Trustee, v. McGuire, 140 Ark. 109, 215 S.W. 693.

[3] In the instant case the conveyance does not purport to limit a life estate to A. J. and M. E. Cox with remainder to their heirs (only), but conveys to "A. J. Cox and M. E. Cox and unto their heirs only forever". Under the common law, this conveyance would either create an estate in fee simple absolute by the entirety or an estate in fee tail by the entirety in A. J. and M. E. Cox (assuming the words "unto their heirs only forever" were used

in their technical sense), and this result would be reached without the operation of the rule in Shelley's case. In other words, under the common law a conveyance to A and to his heirs vested an estate in fee simple absolute in A without the operation of the rule in Shelley's case. Likewise a conveyance to A and to the heirs of his body vested an estate in fee tail in A without the operation of the Rule.

■ Ordinarily, when the word "heirs" is used, it is used in its technical sense, that is, it is a word of limitation upon the estate of the grantee, meaning that the grantor intends for the law to take its course, and does not intend to pass anything to the "heirs" by virtue of the conveyance. A contrary intention may appear in the conveyance, in which event it would become a word of purchase instead of limitation.

In order for M. E. Cox and the Cox children to prevail in their contention as to the effect of the Erwin deed, it must have been the intention of the parties when they used the language "unto their heirs only forever" that the conveyance in legal effect be to "A. J. Cox and M. E. Cox and their bodily heirs". If this be so, then under the Arkansas statute A. J. and M. E. Cox would have been vested with a life estate by the entirety with remainder passing to their bodily heirs in fee simple.

■ It is contended in the brief on behalf of M. E. Cox and the Cox children that by "their heirs only" the parties intended "their children". There is a material difference in "heirs" and "children", for "children", in the absence of a contrary intent, limits a class gift and the class would take by purchase under the instrument. In the instant case, this would have resulted in A. J. and M. E. Cox and the children becoming members of a class and taking equal and concurrent shares. As stated in Restatement of the Law of Property, Section 283:

"When a conveyance limits property in favor of "B and his children" or by other words of similar import, then, unless a contrary intent of the conveyor is found from additional language or circumstances,

"(a) if B has a child or children at the time when this conveyance becomes effective, the named parent is a member of one class composed of himself and his children; and

"(b) if B has no child at the time when this conveyance becomes effective, the named parent is not a member of any class, but the conveyance is construed to limit a life interest in favor of such named parent and a class gift in favor of the children of such parent."

There being children of A. J. and M. E. Cox in being at the time the conveyance became effective Subsection (a) would be applicable. Since, in Arkansas, every interest in real estate granted to two or more persons shall be in tenancy in common, unless expressly declared to be a joint tenancy (Arkansas Statutes, 1947, 50-411), and the words of inheritance are not necessary to convey an estate in fee simple (Arkansas Statutes, 1947, 50-403), A. J. Cox, M. E. Cox and the children in being at the effective date of the conveyance (the delivery of the deed) would have received undivided interests as tenants in common in an estate in fee simple absolute. See Dennis v. Dennis, 152 Ark. 187, 192, 238 S.W. 15.

While it is true that in some cases the facts have warranted a finding that when a grantor used "heirs" he intended "children", such an intention does not sufficiently appear in the instant case, and the Court rejects that contention of M. E. Cox and the Cox children.

■ Quite probably the parties to the Erwin deed had something in mind when they struck out the word "assigns" and inserted the word "only", but just what that something was, the Court has no way of knowing. However, it does not sufficiently appear that they intended to destroy the technical meaning of "unto their heirs", which creates an estate in fee simple absolute, and change the limitation to "unto their bodily heirs", which under the common law creates an estate in fee tail and in Arkansas a life estate in the grantee with remainder to his bodily heirs. Certainly they did not intend the legal result for on December 7, 1911, A. J. Cox and M. E. Cox conveyed to Albert Schaefer 40 acres

of the 400 acres embraced by the Erwin deed and by that conveyance purported to convey an estate in fee simple absolute. The word "only" must be treated as surplusage as far as having any legal significance, and the Court is of the opinion that A. J. and M. E. Cox acquired an estate in fee simple absolute by the entirety under the Erwin deed.

The Murfreesboro Lumber Company, a copartnership consisting of J. W. Anthony, Margaret B. Anthony, Roy Anthony and Clarence Anthony, deraign their title through the deed of December 7, 1911, whereby A. J. and M. E. Cox conveyed the land in Tract No. 16 to Albert Schaefer.

Under the holding of the Court that A. J. and M. E. Cox acquired an estate in fee simple absolute by the entirety under the Erwin deed, it follows that they could pass a fee simple title to Schaefer, which they did, and as Schaefer is the predecessor in title of the Murfreesboro Lumber Company, the latter company acquired a fee simple estate and was the owner of the land in Tract No. 16 at the time of the taking by the Government.

As heretofore held the Erwin deed conveyed an estate in fee simple absolute by the entirety to A. J. and M. E. Cox, but it is necessary to further consider the other contentions of the parties. Tract No. 14 involved in Civil Action No. 391, includes 240 acres, more or less, of the land that was conveyed by Erwin to A. J. and M. E. Cox, but A. J. and M. E. Cox, as husband and wife, did not convey this particular land to the Mac-Kan Mercury Company or to any of its predecessors in title, but by a warranty deed recorded October 26, 1926, A. J. Cox and his then wife, Ada Cox, conveyed the land to the predecessor in title and grantors of the Mac-Kan Mercury Company.

On April 4, 1932, M. E. Cox, the then divorced wife of A. J. Cox, conveyed the lands to the same parties by quitclaim deed. It appears that this was the second such deed executed by Mrs. M. E. Cox to the same parties.

Also at least five of the children of A. J. Cox and M. E. Cox conveyed their interest in all the lands embraced in the Erwin deed by special warranty deeds to the same predecessors in title of the Mac-Kan Mercury Company. No contention is made that these deeds are not valid or that the five grantors have not conveyed all their interest in the lands, if they had any interest to convey.

The question for determination is the effect of the deed by A. J. Cox and wife, Ada Cox, and the quitclaim deeds of M. E. Cox.

On October 20, 1925, the Chancery Court of Pike County, Arkansas, granted a divorce to A. J. Cox from his then wife, M. E. Cox, and following that divorce A. J. Cox married Ada Cox, who was his wife at the time of the execution of the deed hereinbefore referred to and recorded October 26, 1926.

The effect of this deed was to convey to the grantors of the Mac-Kan Mercury Company all of the right, title and interest of A. J. Cox in and to the lands, and which he had formerly held by the entirety with M. E. Cox.

Following the execution of that deed, A. J. Cox died, leaving surviving his former wife, M. E. Cox, and it is the contention of M. E. Cox and the Cox children that upon the death of A. J. Cox a life estate to the entire property vested in M. E. Cox, but as heretofore stated, I have held that A. J. and M. E. Cox owned the land in fee simple absolute by the entirety. Therefore, the question arises as to the effect of the divorce decree and the effect of the quitclaim deed or deeds executed by M. E. Cox.

Where an entiretyship is created, as in this case, neither spouse can defeat the survivorship by a conveyance or devise to a third party, but if the entiretyship has been defeated by the acts of the parties themselves, that rule does not apply. It is earnestly contended that the estate by the entirety was not defeated by the divorce decree and in support of this contention the learned attorneys for M. E. Cox and the Cox children cite several Arkansas cases, which hold: "An estate by entirety, either legal or equitable, cannot be divested out of the husband and invested in the wife, or vice versa, by the Courts. The right to the whole estate by the survivor

prevents this. Roulston v. Hall, 66 Ark. 305, 50 S.W. 690, 74 Am.St.Rep. 97." Heinrich v. Heinrich, 177 Ark. 250, 6 S.W. 2d 21.

The above holding was undoubtedly the law at the time the divorce decree was entered, and the Court without the consent of the parties would not have had authority to dispose of the estate by the entirety or to partition it between A. J. and M. E. Cox, but a reference to the divorce decree discloses that the parties themselves did dispose by agreement of the lands held by the entirety, and I know of no reason why that agreement, when approved by the Court in the divorce case, was not valid, and in my opinion, the decree of the Court, based upon the agreement of the parties recited therein, did vest the entire title to the lands in A. J. Cox, so that the subsequent deed of A. J. Cox and his wife, Ada Cox, conveyed the entire title. See Johnson v. Johnson, 122 Ark. 363, 183 S.W. 967; Ward v. Ward, 186 Ark. 196, 53 S.W.2d 8.

In the case of Dunn v. Dunn, 174 Ark. 517, 295 S.W. 963, the Court said: "The parties were capable of contracting with reference to their property rights, and no proof is shown which warranted the chancellor in refusing to confirm their settlement, which had been voluntarily agreed to and which had been executed by payment of the amount agreed upon by the husband to the wife. Therefore the chancellor erred in refusing to confirm the settlement and in ordering a division of the property between the parties in accordance with the terms of the original decree."

The agreement incorporated in the decree had the same effect as a conveyance and there does not seem to be any question but that one spouse may vest the title in the other to the entiretyship by the execution and delivery of a proper conveyance. Certainly no reason appears why the agreement between A. J. and M. E. Cox should not have been approved by the Chancery Court and in view of the record a failure to approve it would probably have constituted error, especially in the absence of an allegation of fraud or overreaching.

It is contended that the property settlement agreement did not include the interest of Mrs. M. E. Cox in the estate by the entirety. It is true that the agreement did not specifically mention such an estate, but the agreement did include the identical lands here involved and it was clearly the intention of the parties to definitely and completely settle their respective rights and the title to the lands as between them.

In 42 C.J.S., Husband and Wife, § 598, page 180, it is said: "The question whether a separate agreement covers all the property of the parties, or all rights or claims of each spouse in or against the property of the other, or whether certain property rights, or claims remain unaffected by the agreement, is to be determined by the terms of the agreement and the intention of the parties as shown thereby."

At the time the divorce decree was entered A. J. Cox and M. E. Cox owned the land that they had obtained from Erwin, except the 40 acres which they had conveyed to Schaefer. That was all the real property that was owned and they owned it by the entirety. Each understood the ownership and it was clearly their intention to dispose of the estate by the entirety, which, as above stated, could have been done by the execution of a deed but the parties chose to settle the matter by agreement, and at the time of the conveyance by A. J. Cox and wife, Ada Cox, the title was vested in A. J. Cox by virtue of the divorce decree and agreement incorporated therein.

If the divorce decree did not have the effect of vesting the title of Mrs. M. E. Cox in A. J. Cox, what is the effect of the quitclaim deeds that were executed by Mrs. M. E. Cox?

It is earnestly contended by the learned attorneys for Mrs. M. E. Cox and the Cox children that an estate by entirety can not be conveyed by a quitclaim deed because such a deed can not be construed as conveying the interest that might vest in a tenant by the entirety on the death of the other tenant. In other words, it is argued

that when A. J. Cox died the entire estate vested in M. E. Cox and that the conveyance from A. J. Cox became ineffective for the reason that M. E. Cox became possessed of the entire estate when she survived A. J. Cox and that she acquired rights upon the date of the death of A. J. Cox that were not vested in her on the date the quitclaim deeds were executed.

In Davies v. Johnson, 124 Ark. 390, 393, 187 S.W. 323, 324, the Court said: "In Branch v. Polk, 61 Ark. 388, 33 S.W. 424, 30 L.R.A. 324, 54 Am.St.Rep. 266, the rule was laid down that under a deed to husband and wife 'the entire estate is vested in each of the tenants by the entireties, for they hold, not by moieties, but by entireties.' That, in fact, conforms precisely to the common-law definition of an estate by the entirety. If the entire estate is vested at the time of the conveyance in each of the tenants, how could it be divested merely by the granting of a divorce in the absence of a statute authorizing it to be done? Suppose one of the parties executes a deed to a third party during the coverture, purporting to convey the whole estate, the deed would convey all of the vested interest of the grantor, *including the rights resulting from survivorship*; and it would be an anomalous situation to hold that such a vested interest could be divested by divorce of the parties." (Emphasis added.)

It must be remembered that each tenant by the entirety holds the entire estate and not by moieties, and in addition thereto, has a vested right resulting from the possibility of survivorship, and under the above decision Mrs. M. E. Cox clearly had the right to convey such interest as was vested in her at the time. That interest was the entiretyship plus the right of survivorship and this right of survivorship, because being vested, could be conveyed the same as any other vested estate or interest.

The Court, in Davies v. Johnson, supra, further said, 124 Ark. at page 394, 187 S.W. at page 324: "Where land is conveyed to husband and wife, they do not take by moieties, but both are seized of the entirety—the whole in contradistinc-

tion to a moiety or part only. Robinson v. Eagle, 29 Ark. 202; 2 Kent's Comm. 132; 4 Kent's Comm. 414. * * * Neither tenant by entirety can convey his or her interest so as to affect the right of survivorship in the other. The alienation by the husband of a moiety will not defeat the wife's title to that moiety if she survive him; but, *if he survive, the conveyance becomes as effective to pass the whole estate as it would had he been sole seized at the time of the conveyance.* The husband may do what he pleases with the rents and profits during coverture, but he cannot dispose of any part of the inheritance, without his wife's consent." (Emphasis added.) See Moore v. Denson, 167 Ark. 134, 268 S.W. 609.

What kind of a deed is necessary to convey all the rights possessed by a tenant by the entirety?

A memorandum by Honorable Harry E. Meek is referred to, in which he states: "The conventional way to terminate the entiretyship and vest title in one spouse only is for both to convey to a third party, such third party to convey to the spouse who is to take sole title. It is possible, however, that a warranty deed from one spouse to the other might achieve the same result." The writer has a great respect for the ability and learning of Mr. Meek, but can not accept the statement as authority that an estate by the entirety can not be conveyed except by a warranty deed.

If the divorce decree did not have the effect which the Court has held that it did, the conveyance by A. J. Cox and his wife, Ada Cox, did not terminate the estate of M. E. Cox, and likewise, the conveyance by M. E. Cox did not terminate the estate of A. J. Cox, but where both tenants by the entirety convey to the same person, as was done by A. J. Cox and M. E. Cox, the conveyances have the effect of vesting the entire estate in their grantee.

In Lucado v. A. Hirsch & Company, Inc., 203 Ark. 792, 158 S.W.2d 697, 698, it is said: "It is well settled, of course, that a quitclaim deed does not operate to convey a title subsequently acquired by the grantor in a deed of that character; but

it is equally as well settled that a quit-claim deed does convey all title and any interest owned by the grantor at the time of its execution. A leading case on this subject in this state is that of Bagley v. Fletcher, 44 Ark. 153, 160, where it was said that '* * * in this country a quit-claim deed is a substantive mode of convey-ance, and is as effectual to carry all the right, title, interest, claim and estate of the grantor, as a deed with full covenants, although the grantee has no possession of or prior interest in the lands. It is al-most the only mode in practice where the vendor does not wish to warrant the title.' See, also, Holub v. Titus, 120 Ark. 620, 180 S.W. 218; Beith v. McKenzie, 191 Ark. 353, 86 S.W.2d 176."

In Roulston v. Hall, 66 Ark. 305, 50 S.W. 690, 692, 74 Am.St.Rep. 97, the Court said: "Neither tenant by entirety can convey his or her interest so as to affect the right of survivorship in the other. The alienation by the husband of a moiety will not defeat the wife's title to that moiety if she survive him; but, if he survive, the conveyance becomes as effective to pass the whole estate as it would had he been sole seised at the time of the conveyance."

Mrs. M. E. Cox did in fact survive A. J. Cox, and, by the execution of the quitclaim deeds, conveyed all of her vested interest, which included the right result-ing from survivorship, and the conveyances were valid conveyances and not contrary to those decisions that hold that a future in-terest can not be conveyed by a quitclaim deed. See Pope v. McBride, 207 Ark. 940, 184 S.W.2d 259.

Therefore, if A. J. Cox was not vested with the entire title by virtue of the divorce decree, yet, the conveyances by quitclaim deed of Mrs. M. E. Cox were sufficient to convey all of her right, title and interest in the lands, including the rights which she acquired by survivorship, and thus the entire estate became vested in their gran-tees.

All of the defendants other than Mrs. M. E. Cox and the Cox children contend that the judgment of the Chancery Court of Pike County entered on January 5, 1933, in Cause No. 1804, therein pending, in

which M. E. Cox, et al. were plaintiffs and D. L. Parnell, et al. were defendants, is res judicata of the issues in the instant causes, Civil Nos. 374, 391 and 399.

Attached to the brief filed by the Mur-freesboro Lumber Company, a partnership, and the brief filed by the intervenors, Mac-Kan Mercury Co., Southwestern Quick-silver Company, corporations, and R. B. Carroll and R. B. Carroll as administrator, are certified copies of the pleadings and judgment.

The judgment of the Court recites that the plaintiffs appeared by their solicitor, and the defendants appeared by their solici-tors and that the demurrers filed by the respective defendants were submitted to the Court and that the Court, after con-sidering the complaint and the demurrers, sustained the demurrers of the respective defendants and dismissed the complaint for a want of equity.

Whether a judgment sustaining a demurrer constitutes res judicata depends upon whether the judgment is upon the merits. In Luttrell v. Reynolds, 63 Ark. 254, 37 S.W. 1051, the Court approved a quotation from Freeman on Judgments, as follows: "If any court errs in sustaining a demurrer and entering judgment for de-fendant thereon, when the complaint is sufficient, the judgment is, nevertheless, on the merits. It is final and conclusive until reversed on appeal."

The above is the general rule and the question has been before the Supreme Court of Arkansas in many cases.

In Cooper v. McCoy, 116 Ark. 501, 173 S.W. 412, 413, the Court said: "In Melton v. St. Louis, I. M. & S. Ry. Co., 99 Ark. [436], 437, 139 S.W. [289], 291, this court held that the question of the sufficiency of the cause of action raised by a general de-murrer became an issue of law, and the determination thereof by sustaining the demurrer was an adjudication and decision by the court by which the merits of the case were determined, and that plaintiff electing to stand upon his pleading, and de-clined to amend his complaint, the adjudi-cation sustaining the general demurrer be-comes 'a final determination of the issue of

law deciding the merits of the case, and it is then a final judgment which can be set aside only upon appeal.'"

The question was also discussed in Barrentine v. Henry Wrape Company, 113 Ark. 196, 167 S.W. 1115, in which the Court approved the rule as announced in Luttrell v. Reynolds, supra, and held that if the Court in determining the demurrer merely decides that the facts stated in the complaint do not constitute a cause of action, that such decision or determination does not extend to any issue not before the Court on the hearing of the demurrer, and thus, the plaintiffs are not prevented from later presenting their case in such a form as to not be vulnerable to the attack made upon it in the former suit.

In the case of Tri-County Highway Improvement District v. Vincennes Bridge Company, 170 Ark. 22, 278 S.W. 627, 630, the Court quoted with approval a statement by Mr. Justice Field in the case of Bissell v. Spring Valley Township, 124 U.S. 225, 88 S.Ct. 495, 31 L.Ed. 411, as follows: "There are undoubtedly many cases where a final judgment upon a demurrer will not conclude as to a future action. The demurrer may go to the form of the action, to a defect of pleading, or to the jurisdiction of the court. In all such instances the judgment thereon will not preclude future litigation on the merits of the controversy in a court of competent jurisdiction upon proper pleadings. And it has been held that, where a demurrer goes both to defects of form and also to the merits, a judgment thereon, not designating between the two grounds, will be presumed to rest on the former. But where the demurrer is to a pleading setting forth distinctly specific facts touching the merits of the action or defense, and final judgment is rendered thereon, it would be difficult to find any reason in principle why the facts thus admitted should not be considered for all purposes as fully established as if found by a jury, or admitted in open court. If the party against whom a ruling is made on a demurrer wishes to avoid the effect of the demurrer as an admission of the facts in the pleading demurred to, he should seek to amend his pleading or answer, as the case may be. Leave for that purpose will seldom be refused by the court upon a statement that he can controvert the facts by evidence which he can produce. If he does not ask for such permission, the inference may justly be drawn that he is unable to produce the evidence, and that the fact is as alleged in the pleading. Courts are not established to determine what the law might be upon possible facts, but to adjudge the rights of the parties upon existing facts; and, when their jurisdiction is invoked, parties will be presumed to represent in their pleadings the actual, and not supposable, facts touching the matters in controversy."

In the same case the Court also quoted from Alley v. Nott, 111 U.S. 472, 4 S.Ct. 495, 28 L.Ed. 491, as follows:

"'A demurrer to a complaint, because it does not state facts sufficient to constitute a cause of action, is equivalent to a general demurrer to a declaration at common law, and raises an issue which, when tried, will finally dispose of the case as stated in the complaint, on its merits, unless leave to amend or plead over is granted. The trial of such an issue is the trial of the cause as a cause, and not the settlement of a mere matter of form in proceeding. There can be no other trial except at the discretion of the court, and, if final judgment is entered on the demurrer, it will be a final determination of the rights of the parties which can be pleaded in bar to any other suit for the same cause of action.'"

The rule is also discussed in McCarroll, Commissioner of Revenues v. Hollis & Company, 201 Ark. 931, 148 S.W.2d 167, and in many other cases.

▆▆▆ In order to determine whether the judgment of the Pike Chancery Court is res judicata the Court must examine the complaint to ascertain if the judgment was based upon special facts touching the merits of the action or whether the demurrer merely considered defects of form, inconsistent statements and surplusage. The complaint was inartfully drawn but an analysis of the same discloses that the demurrer decided issues of law raised by the complaint and was not directed to nor

based upon the mere form of the complaint or inaccuracies contained therein. The complaint that was considered by the court definitely raised the question of the title of the plaintiffs in the lands and the allegations of title and facts could not have been more fully established by the introduction of testimony.

It is not necessary to set forth the complaint in extenso. A reference to certain paragraphs will suffice.

In paragraph No. 4 it was alleged that Charles T. Erwin and wife, S. J. Erwin, on January 19, 1911, conveyed the 400 acres of land, more or less, to A. J. Cox and M. E. Cox and their heirs only; "that by the terms of said deed there was a limitation of the estate in A. J. Cox and M. E. Cox, under C. & M. Digest, Section 1499, limiting the estate of grantees, A. J. Cox and M. E. Cox to that of a life estate and the fee in said lands was at that time vested in plaintiffs herein, as the heirs of A. J. Cox and M. E. Cox."

The complaint recites that A. J. and M. E. Cox conveyed on December 7, 1911, the SW¼ of the NE¼ of Section 4, Township 7 South, Range 25 West, containing 40 acres, more or less, (Tract 16—The Murfreesboro Lumber Company tract) to Albert Schaefer and that the title to said tract had come by mesne conveyances to M. I. Larrick, and in reference to that tract the plaintiffs alleged in paragraph No. 5 that said land "should be decreed in M. E. Cox for her life and at her death to the heirs of A. J. Cox and M. E. Cox, in fee simple."

In paragraph No. 6 it is alleged that on October 26, 1926, A. J. Cox and his then wife, Ada Cox, conveyed the remaining lands which they had acquired from Charles T. Erwin to B. L. Parnell and J. W. Parnell (the same being included now in Tracts 14 and 8), and that the said A. J. Cox had only a life estate in said land and that upon the death of the said A. J. Cox the fee simple title did vest in the heirs of A. J. and M. E. Cox, and in reference to the Erwin deed it is alleged "that it was the intention of the grantees, when they acquired said land that it was

their home for life and to their heirs at death, thus limiting the estate to a life estate, with a fee in the heirs."

That the said J. W. Parnell and D. L. Parnell had conveyed certain of the lands to R. B. Carroll and that the deeds from D. L. Parnell and wife to the said R. B. Carroll "should be cancelled, set aside and forever held for naught."

That the said D. L. Parnell joined by his wife and R. B. Carroll joined by his wife had made certain conveyances to Leo Yount, Inc., and that Leo Yount, Inc., would sever from the soil minerals or chemicals and other products. "That by reason of such severance from the soil, are working irreparable injuries upon the remaining estate and that the title in said D. L. Parnell and R. B. Carroll was not sufficient to permit them, under the law, to convey or to contract away the mineral rights and the severance from the soil of minerals, chemicals and by-products."

That the said Leo Yount, Inc., had conveyed to other defendants who were depreciating the value of the land and removing from the soil without proper authority a valuable commodity. "That they should be enjoined or restrained from further operations and that the lease herein transferred to the Leo Yount, Inc., and the Southwestern Quicksilver Company * * should be cancelled, set aside and forever held for naught."

In paragraph No. 10 the land is described except the 40 acres conveyed to Schaefer and hereinbefore referred to and that paragraph concludes, "that the property hereinbefore described, which the said A. J. Cox and Ada Cox, his wife, conveyed to D. L. Parnell and J. W. Parnell, be decreed the property of the plaintiffs herein, the heirs of A. J. and M. E. Cox."

The prayer of the complaint was that the plaintiffs have judgment against the defendants for all damages found due them by reason of the defendants having severed from the soil certain commodities and quantities of cinnabar and timber and damages occasioned by the erection of machinery and construction of roads on said property and for such other relief "as their

interest appear and that plaintiffs herein have judgment against the defendants and each of them, for their cost herein expended and all other general and proper relief."

The above summary of the complaint is sufficient to convince this Court that the Chancery Court of Pike County held that the Erwin deed conveyed a fee simple title to A. J. and M. E. Cox and that the judgment of the Chancery Court was based upon the merits and the allegations of title and not upon any defect in the form of the complaint. Therefore, the judgment of the Pike County Chancery Court sustaining the demurrers and dismissing the complaint is res judicata of the rights of all parties to that suit or their privies.

The decision of the Court on the question of res judicata is sufficient in itself to dispose of all of the cases, but in justice to the contentions of able attorneys for M. E. Cox and her co-defendants the Court felt that all questions raised should be considered and determined.

Ordinarily questions of title as between rival claimants to the proceeds paid or to be paid by the government for lands condemned are not determined until the amount of the just compensation has been fixed and adjudged, but in these cases the Court felt justified in determining the question in advance of such adjudication because of the desire of the parties to assert claims in various amounts representing, in their opinion, just compensation.

Conclusion

Under the conclusions reached by the Court an order striking the answer of the defendants, Crown Cox, et al. in Civil Action 374 as to Tract No. 16 should be entered and adjudging the Murfreesboro Lumber Company, a partnership, to be the owner of said land as against Crown Cox and his co-defendants.

Likewise, an order should be entered sustaining the intervention of the Mac-Kan Mercury Company, a corporation, and dismissing the answer of the defendants, M. E. Cox, et al. in Civil Action 391 as to Tract No. 14 and adjudging the title to said lands to be in the said Mac-Kan Mercury Company as against the said M. E. Cox and her co-defendants.

As to the 80 acres of land, more or less, included in Tract No. 8, which was embraced in the Erwin deed, no order will be entered since M. E. Cox and her co-defendants have not answered in that cause, Civil No. 399.