Paul RHODES, Plaintiff,
v.
Clarence A. H. MEYER et al., Defendants.
Civ. No. 01682.

United States District Court
D. Nebraska.

Dec. 3, 1963.

As Corrected Dec. 10, 1963.

Paul Rhodes, Howe, Neb., pro se.

Robert A. Nelson, Lincoln, Neb., pro se, and for defendants Clarence A. H. Meyer, Cecil Brubaker, Dwain L. Jones, Gerald S. Vitamvas, Rush Clarke, Peter E. Marchetti, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Michael Linch, George Turner, Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Brower, Richard M. Van Steenberg, Albert W. Crites, Ted R. Feidler, H. B. Evnen, J. Arthur Curtiss, John Greenholtz, Maurice Sigler and George Lewis.

Clarence A. H. Meyer, Lincoln, Neb., pro se, and for defendants, Cecil Brubaker, Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Peter E. Marchetti, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Michael Linch, George Turner, Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Brower, Richard M. Van Steenberg, Albert W. Crites, Ted R. Feidler, H. B. Evnen (mistakenly named as H. B. Even), J. Arthur Curtiss and John Greenholtz.

DELEHANT, Senior District Judge.

Submitted in behalf of the parties, and pending for ruling by the court, are four separate motions to dismiss the plaintiff's amended complaint:

a) one filed by the defendant Robert A. Nelson (filing 26);

b) one filed by the defendants, Maurice Sigler and George Lewis (filing 27);

c) one filed by the defendants, Dwain L. Jones, Gerald S. Vitamvas, Peter E. Marchetti, H. B. Evnen and J. Arthur Curtiss (filing 28); and

d) one filed by the defendants, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Michael Linch, George Turner, Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Brower, Richard M. Van Steenberg, Albert W. Crites, Ted R. Feidler and John Greenholtz (filing 29).

Submitted also in the Motion to Dismiss of the defendant, Robert A. Nelson, is what constitutes a Motion to Strike paragraphs XIX, XXI and XXIII of the Amended Complaint as scandalous and impertinent, specifically with respect to that moving defendant.

The grounds upon which the Motions to Dismiss are explicitly premised may be recalled very briefly. Each of these Mo-

tions asserts all of these separate grounds for its allowance:

a) that the amended complaint is scandalous; impertinent and vexatious;

b) that the amended complaint fails to state a claim upon which relief can be granted against the several moving defendants;

c) that plaintiff's alleged claim is not within the protection of the Federal Civil Rights Act, or any other statutory or constitutional provision upon which plaintiff seeks to predicate his action; and,

d) that each moving party is immune from liability under the Federal Civil Rights Act for the reason that the conduct attributed to him or her, as the case may be, to the extent to which, if at all, any such conduct occurred, was done in his or her official capacity (as shortly herein indicated); for conduct in which capacity it is contended that immunity to suit exists.

Each of the two several motions filed as numbers 27 and 29 asserts the identity of the facts alleged in support of the claim put forth in the present amended complaint with the facts set out in case No. 01322, entitled Rhodes v. Houston, et al., D.C., 202 F.Supp. 624, affd. 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; wherefore, bar by the rule *res judicata* is claimed.[1] For that matter, on the oral submission, all of the parties defendant pointed to the ruling in Rhodes v. Houston, supra, the defendants who were parties to it under the rule *res judicata*, and all parties defendant for its authoritative reasoning and legal cogency. And the several motions noted as filings 26, 27, and 29 insist that the amended complaint contains all of the vital defects of the complaint initially filed herein, which the court heretofore, upon motion, struck from the files (filing 24 and memorandum, filing 23).

To an understanding of the amended complaint, and the motions aimed at it, the identification of the parties and of their respective official positions or employment at the time or times involved in the litigation, appears to be necessary. This is now set down almost exclusively upon the basis of averments in the amended complaint, but, to an imperative extent, with corrective clarification by resort to available and pertinent public records.

Paul Rhodes, frequently referred to as Paul E. Rhodes, is, and for more than twenty years continuously heretofore has been, an attorney at law. He was born on July 27, 1919 in Nebraska, obtained in this state a common school and high school education, and studied in the University of Nebraska for six years in its College of Business Administration and its School of Law, from the latter of which he graduated in its class of 1943. He was admitted to the bar of Nebraska on June 23, 1943. He is, and, continuously since July 27, 1943, has been a member of the bar of this court. Hence, while he prosecutes this action *pro se,* he does so, not as an untutored layman, but rather as an experienced practitioner at the bar, for he has long and actively pursued the practice of his profession. He is a resident and citizen of Nebraska.

Each of the several defendants is, and at all times involved herein has been, a resident and citizen of Nebraska. Clarence A. H. Meyer is, and since January 5, 1961 has been, the Attorney General of Nebraska. At all times material herein, he was either the Deputy Attorney General or—and more recently, and now, supra—the Attorney General, of Nebras-

[1] It is noted parenthetically at this point that none of the moving parties in filing 28, namely Dwain L. Jones, Gerald S. Vitamvas, Peter E. Marchetti, H. B. Evnen and J. Arthur Curtiss was a party to Rhodes v. Houston, supra; and that Robert A. Nelson, the moving party in filing 26 was not a party to that action. Of the moving parties in filing 27 Maurice Sigler was, but George Lewis was not, a party to Rhodes v. Houston, supra.

ka. Cecil Brubaker and Dwain L. Jones, at all material times were Assistant Attorney Generals of Nebraska. At all such times Gerald S. Vitamvas was either an Assistant Attorney General, or the Deputy Attorney General, of Nebraska, and Rush Clarke and Robert A. Nelson were special Assistant Attorney Generals of Nebraska.[2] At such times, too, James L. Macken was the duly elected and qualified County Attorney of Morrill County, Nebraska; Virginia A. Schuetz, the duly elected and qualified Clerk of the District Court of Morrill County, Nebraska; Norval Houston and Michael Linch, respectively, the Sheriff and the Deputy Sheriff of Morrill County, Nebraska; Leo Knudtson and Carl Sanders, officers, or members, of the Nebraska Safety Patrol; George Turner, the Clerk of the Supreme Court of Nebraska; Robert G. Simmons, the Chief Justice of the Supreme Court of Nebraska;[3] Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh and Robert C. Brower (inaccurately designated in the amended complaint as Robert C. Browers), Associate Justices of that court;[4] Richard M. Van Steenberg, the District Judge of the Seventeenth Judicial District of Nebraska, wherein Morrill County is located;[5] Albert W. Crites, the District Judge of the Sixteenth Judicial District of Nebraska; Maurice Sigler the warden and John Greenholtz the deputy warden, of Nebraska State Penitentiary, located at Lincoln, Nebraska; and George Lewis, a physician employed in his professional capacity by, and performing his duties

within, the Nebraska State Penitentiary, and in part upon, and in relation to, members of the prison population of that institution.

The plaintiff instituted this action on March 8, 1963 by the filing of his complaint (filing 1). In the face, and after submission, of sundry motions to dismiss the complaint, the court, in harmony with a memorandum opinion (filing 23), on June 7, 1963, by an order duly entered herein, found that the complaint failed to comply with Rule 8(a) Federal Rules of Civil Procedure, and also was scurrilous, scandalous and impertinent, and ordered that the complaint be stricken from the files, but that the plaintiff be granted leave, on or before July 1, 1963 to serve and file herein an amended complaint. Under the leave thus granted, the amended complaint was served on June 25, 1963 and filed herein on June 26, 1963. The motions already outlined followed.

With an effort in the direction of adequacy, yet, with reasonably necessary abbreviation, the amended complaint is now summarized. At its threshold it declares that jurisdiction of the action is invoked under "28 U.S.C.A., 1331, 28 U.S.C.A., 1343, and 42 U.S.C.A. 1981, 1983, 1985, 1986, 1987, 1988 and the United States Constitution Amendments IV, V, VI, VII, VIII, XIII and XIV, and Article 1 section 9 of the United States Constitution, and sections of the Nebraska Statutes as follows: R.R.S.Neb.1943, re-issue of 1956—7–105, 7–106, 29–2801, 29–2805, 29–2806, 29–2809, 29–2819";

2. At least, it is so alleged in the amended complaint. The writer of this memorandum has not verified the accuracy of that averment from the public records, but, for the purpose alone of the present ruling, accepts it as true.

3. In point of fact, the tenure of Chief Justice Simmons ended January 2, 1963, and he is now the retired Chief Justice of that court in completely inactive status.

4. With this reservation, however, that Justice Leslie Boslaugh did not assume his office until January 5, 1961 and Justice Brower did not assume his office until

March 13, 1961, and that, prior to their respective accessions, so far as this file discloses, neither of them had any judicial office, or other public position, in Nebraska.

5. At this point, a reservation must be made. Richard M. Van Steenberg was the judge of the District Court of the Seventeenth Judicial District of Nebraska for the time material herein prior to January 5, 1961; but on January 5, 1961 the defendant Ted R. Feidler became, and he has since continuously been, and now is, the District Judge within and for that District.

and follows with a declaration that the action is brought under the constitution and laws of the United States "and the amount in controversy exceeds $10,-000.00, exclusive of interest, costs and fees." Then, at considerable length, after declaring the plaintiff's citizenship and residence, supra, it names the several defendants, Clarence A. H. Meyer, Cecil Brubaker, Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, and Michael Linch, and attributes to each of them, as of all times material to the pleading, the office or public position hereinbefore identified in respect of each of them. It may also be understood that later in the pleading and less systematically, the amended complaint identifies separately the defendants, John Greenholtz, Maurice Sigler and George Lewis, and their respective positions in the Nebraska State Penitentiary as already disclosed herein. And as to each defendant in this paragraph mentioned, the amended complaint is regarded as asserting that every act by such amended complaint attributed to such defendant was done or performed under the color and authority of his or her designated office or position.

The amended complaint's initial identification of the defendants mentioned in the last preceding paragraph (other than the defendants, John Greenholtz, Maurice Sigler and George Lewis) is followed by paragraph III, which contains this language:

"That each of the defendant (sic) hereinafter named were at all times hereto pertinent and now are (sic) attorneys and counselors or one of said positions, namely the defendants, Clarence A. H. Meyer, Cecil Brubaker, Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Peter E. Marchetti, George Turner, Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Browers (sic), Richard M. Van Steenberg, Albert W. Crites, and Ted R. Feidler, H. B. Even (sic) and J. Arthur Curtiss, and were all attorneys admitted to the Nebraska State Bar, Nebraska State Bar Association, to practice law by the Supreme Court of Nebraska, and all of their actions as hereinafter described were under the color and authority of that office as Attorney at Law of the State of Nebraska, and the Nebraska State Bar Association, an official part of, organ of, and division of the State of Nebraska."

Paragraph IV of the amended complaint is copied in full as follows:

"That previous to November 21, 1960 the defendants, Richard M. Van Steenberg, Clarence A. H. Meyer, Dwain L. Jones, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Michael Linch, and George Turner and Albert W. Crites, entered into an agreement to deprive this plaintiff of his Federal Civil and Constitutional Rights without due process of law and to deny him equal protection of the law; notwithstanding that previous to November 20, 1960 the said Richard M. Van Steenberg had disqualified himself as District Judge of the District Court of Morrill County, Nebraska, in all actions in which Paul Rhodes was plaintiff or defendant, and that said disqualification was on account of bias and passion and prejudice against this plaintiff that would prevent this plaintiff from securing a fair trial and that said situation still existed on November 21, 1960 and on December 5, 1960 and at all times thereafter, the disqualification had not been removed."

Adverting, by reference, to its paragraph last quoted, the amended complaint next avers that notwithstanding Judge Van Steenberg's alleged disqualification, and in furtherance of the conspiracy (both mentioned in such quoted paragraph) "the defendants last above

named," that is to say, Richard M. Van Steenberg, Clarence A. H. Meyer, Dwain L. Jones, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Michael Linch, George Turner and Albert W. Crites, secured from one H. Snyder, Deputy Sheriff of Denver County, Colorado, a false affidavit to the effect that he served on Paul Rhodes a Notice of Hearing in Case No. 4819 then pending in the District Court of Morrill County, Nebraska, and caused such affidavit to be filed on November 18, 1960 in such Case No. 4819, "knowing said affidavit of service of *Notice of hearing to be held on November 21, 1960,* was a false affidavit, when in truth and in fact *they well knew that said notice was not delivered to Paul E. Rhodes at 7:45 A.M. on the 15th day of November, 1960.*" (Emphasis added.) [6] It is also alleged that the Snyder affidavit was procured and filed in such Case 4819 for the purpose of deceit and fraud upon the court "with the intent to deceive and with the intent to defraud the court, the Judge, the Party to the action, this plaintiff," that reference being manifestly to the use of the affidavit by its filing in Case No. 4819.[7] With reference, still, to that allegedly false affidavit, it is also alleged that "all of the defendants * * * named in this action except one defendant, Peter E. Marchetti," secured a copy of such false affidavit, which copy was prepared by the defendant, Virginia A. Schuetz, with the intent to deceive, and perpetrate a fraud upon, the Honorable Robert Van Pelt, one of the judges of this court and the presiding judge in Case No. 01322 in this court (*vide infra*), and caused such copy

to be filed in such case No. 01322 in this court on January 24, 1962, while Case No. 01322 was pending here, all with the intent to deceive Judge Van Pelt, and to defraud and deceive the plaintiff herein, which was done through the collusion with one another of all of the defendants hereto except Peter E. Marchetti, and in violation of the statutes and constitution of the United States, the constitution of Nebraska, and sections 7–105 and 7–106 R.R.S.Neb.1943, Reissue of 1956; and at the time of such filing of such copy in this court, the defendants hereto, except Peter E. Marchetti "had plaintiff confined in the 'Hole' (meaning thereby, the prison jail) of the Nebraska State Penitentiary, held incommunicado and without use of telephone, and other necessary freedom to properly defend himself against said fraud, and had been deprived of his liberty by said defendants, as well as typewriter and other necessary elements and necessaries to prepare pleading and defend against said false affidavit and collusion and all of the defendants except Peter E. Marchetti consented thereto."

The plaintiff further avers in the amended complaint that in furtherance of such collusion and conspiracy, the defendants, except Peter E. Marchetti, proceeded on November 21, 1960 "to try this plaintiff in absentia for Contempt of Court," the court then entered therein an order, showing that the defendant (meaning the plaintiff herein) was not present and was not represented by counsel, and that hearing was had on the merits, and considering, ordering and adjudging Paul Rhodes to be guilty of Contempt of Court as charged and sentencing him "to confinement in the Ne-

---

6. The entire quoted language is taken from the plaintiff's amended complaint. It will be observed that the notice in controversy concerned a hearing in Case No. 4819 to be held on November 21, 1960, and that the present pleader denies that it was served on him "at 7:45 A.M. on the 15th day of November, 1960," not that it was not served on him at all or on November 15, 1960 but at some hour other than 7:45 A.M.

7. Paradoxically, the allegation thus reflected would have it that the defendant, Richard M. Steenberg, was both one of the conspirators and, at the same time, the trial judge whom it was designed to deceive by the filing of the affidavit. The acceptance of such a position would involve a degree of credulity even more profound than that which judges of the United States District Courts are currently assumed to possess.

braska State Penitentiary at Lincoln, Nebraska, for a period of nine (9) months at hard labor, Sundays and holidays excepted, and to pay a fine in the amount of two thousand five hundred dollars ($2,500.00) and the costs of this proceeding," all allegedly in deprivation of his Federal Civil Rights and Constitutional Rights.

The plaintiff then alleges in his amended complaint that "in furtherance of the collusion, deceit and fraud heretofore alleged all of the defendants in this action"—apparently thus not excepting Peter E. Marchetti—further agreed to deprive plaintiff of his Federal Civil Rights and Federal Constitutional guarantees by securing and preparing or causing to be prepared, or consenting to the preparation of, "on December 18, 1961 or thereabout" false affidavits of John Greenholtz and Maurice Sigler, respectively the deputy warden and warden of the Nebraska State Penitentiary, and acting under the color of their respective offices, in which were contained false and untrue statements of fact, of which a verbatim statement is set out in a footnote hereto;[8] that such affidavits were sworn to by the affiants therein in their respective official capacities, were procured by all defendants hereto, and were filed in Case No. 01322 then pending in this court with intent to deceive this court and the Judge in such action, and even the plaintiff himself, all in collusion and conspiracy between the defendants.

At considerable length the plaintiff, in his amended complaint, alleges several features of his imprisonment for the apparent purpose of particularizing the falsity of specific features of the Greenholtz-Sigler affidavits. These averments include statements:

a) that from January 23, 1961 to July 7, 1961 plaintiff was held prisoner in the Nebraska State

8. The allegedly false statements follow:

"That the plaintiff herein was a resident of that institution from January 23, 1961, to August 21, 1961. His status was commonly termed a 'Safekeeper.'

"That said Paul E. Rhodes, hereinafter referred to as 'Rhodes' was not treated differently than any Safekeeper nor was he subjected to any treatment to which any Safekeeper is not subjected in the proper maintenance of institutional cleanliness, health, safety and discipline. He was received in the manner in which every Safekeeper is received at this institution.

"Said receipt came as a result of delivery of Rhodes by proper officials pursuant to a court order valid upon its face.

"Rhodes was not subjected to hard labor at any time during his residence in this institution nor labor of any other description nor does this affiant intend to subject or allow Rhodes to be subjected to labor of any description during his residence at this institution.

"Rhodes was never treated differently than any Safekeeper would be in maintaining discipline, sanitation and health in the institution nor were any rules or regulations instituted as a result of his residence.

"Pursuant to published rules and regulations of which Rhodes had been made aware, he was subjected after proper hearing before penitentiary officials, to certain disciplinary measures as a result of his own misconduct. These measures are internal affairs of a state institution, and not cruel nor inhuman punishment nor injurious to health and at no time involve the deprivation of anything essential to health or well being of the resident involved.

"At no time was Rhodes subjected to abuse, harrassment or continual interrogation.

"Rhodes was never informed that his residence in Safekeeping would be diminished pursuant to Statute of State of Nebraska but was informed that request would be made of proper state officials to ascertain whether or not any statutes would result in said diminution.
* * *
" * . * * He was subject to no legal deprivations no abuses and performed no hard labor. He was not denied visitors, right to consult counsel, United States mail nor any other matter to which he was entitled, but in all these matters was subjected to those institutional regulations, legally propounded, which are considered by the State of Nebraska to be necessary for the maintainance of sanitary conditions, health of the populace, safety of all persons and proper day to day management of the institution."

Penitentiary by all of the defendants hereto as a convict, i. e. convict No. 21675, serving a sentence and on January 23, 1961 was assigned such number in the chronological order of convicts received to serve felony sentences;

b) that no inmate of such penitentiary held for safe keeping of a sheriff or court pending conviction and until final execution of sentence is ever or had been assigned a convict number to and including July 7, 1961;

c) that from January 23, 1961 to July 7, 1961 both inclusive plaintiff was subjected to hard labor by the defendants to this action, involuntary servitude, by being forced to take and submit to a course of prison orientation and was assigned to the Reception Center, in the Penitentiary for that purpose; that no safekeeper in the Penitentiary is assigned to the reception center and forced to take an orientation course, consisting of the first four weeks of hard labor assignment of all convicts;

d) that notice that plaintiff was not being held as a safekeeper was given by the publication on or about February 18, 1961 and June 13, 1961 in "The Forum," a weekly newspaper, evidently by the publication of his photograph with the legend, "Rhodes 21675;"

e) that from February 21, 1961 to May 12, 1961 plaintiff was by, or with the consent of, the defendants, assigned to the general prison population, and no safekeeper has ever been so assigned in such penitentiary.

Reverting to Case No. 01322 in this court, and the same case on appeal, being Case No. 16990, 309 F.2d 959, United States Court of Appeals, Eighth Circuit,

the plaintiff, in the amended complaint, makes further allegations to the effect,

a) that, in furtherance of the alleged conspiracy all of the defendants in this action, made further use of the foregoing allegedly false affidavits in Case No. 01322, and in appellate Case No. 16990, by declaring in a brief in the latter phase of that litigation that the plaintiff, under his sentence for Contempt of Court was not required to serve any part of his sentence at hard labor "and that portion of the sentence has become a nullity;" and that such use was made with intent to deceive the United States Court of Appeals, Eighth Circuit, and the judges thereof in the then pending case and constitutes a violation of Section 7-106 R.R.S.Neb.1943;

b) that in oral argument in Appellate Case No. 16990, on September 17, 1962, the defendant, Robert A. Nelson, all other defendants consenting, "did succeed in causing said court * * to rely thereon" (i. e. on the allegedly false affidavits) "to this plaintiff's detriment;"

c) that in their brief to this court in Case No. 01322, the defendants hereto, with intent to perpetrate a fraud on the plaintiff hereto and to deceive the Honable Robert Van Pelt, the judge acting therein, told the court that in the case of Paul E. Rhodes v. W. W. Shulz et al, being Case No. 6617 in the District Court of Cheyenne County, Nebraska (a habeas corpus proceeding brought by the plaintiff), the Sheriff did not have a copy of the commitment issued on November 25, 1960 by the Clerk of the District Court of Morrill County, Nebraska, in Case No. 4819 therein, referred to as set out in his return and alleged to be delivered to the

court with his return in Case No. 6617, Cheyenne County, Nebraska, wherein the court discharged the plaintiff from "the unlawful commitment and judgment of Case No. 4819, District Court of Morrill County, Nebraska," when, actually, "the same was in the files in said case in Cheyenne County, Nebraska, and had been there since the sheriff had delivered the return and the commitment copy to the Judge of said Cheyenne County Court on January 14, 1961;"

d) that, later, the defendants in oral argument before the United States Court of Appeals, Eighth Circuit in Case No. 16990, lied to such court by declaring that the discharge of plaintiff in the Habeas Corpus Case was granted because the only document which the sheriff had in his possession as a basis for plaintiff's arrest was a copy of the order of the District Court of Morrill County, Nebraska, and not the commitment issued by the Clerk of such court; whereas, in truth the commitment was served, and the endorsement of the sheriff on the reverse side thereof so shows;

e) that the defendant, Robert A. Nelson, all defendants hereto consenting, on September 17, 1962, in response to questions from the Judges of the Court of Appeals, (manifestly in the course of oral argument in Case No. 16990) falsely represented to that court that plaintiff had not been forced to serve his sentence at hard labor between January 23, 1961 and July 7, 1961;

For the rest, the plaintiff in his amended complaint avers (a) his demand, on February 23, 1963 upon the defendant Maurice Sigler, as Warden of the Nebraska State Penitentiary, for "a certified copy of the plaintiff's prison record, record entry in admission book, plaintiff's receipt for personal property, plaintiff's pictures and finger print card," after tendering the legal fee therefor, which request was refused, although such records are public records, and that such records were altered and forged sometime on or about July 5, 1961 at the direction of Maurice Sigler with the knowledge and consent of, and in conspiracy with all of the other defendants, the further to deny the plaintiff equal protection of the law and due process of law, and in discrimination against the plaintiff as a member of the white race, "because defendant Maurice Sigler with consent of defendant Meyer, furnished members of the negro race a copy of their prison records upon a tender of the proper legal fee therefor but refused this plaintiff and same privilege. This plaintiff is a white man.;" and (b) that plaintiff demanded with tender of legal fee, on February 26, 1963, of defendant George Lewis, prison physician, a certified copy of plaintiff's hospital record in the Penitentiary from January 23, 1961 to July 5, 1961, but was refused a copy of such record; that such a hospital record does exist, and was altered and forged on or about July 5, 1961, with the consent of all of the defendants, for like purpose as the alleged alteration and forgery, supra, of his prison record, "and with the intent to deceive the United States Court and the Nebraska Supreme Court in an action then pending in said court entitled Rhodes v. Sigler, and to deprive this plaintiff of due process and equal protection of the law and his rights guaranteed by the 14th Amendment of the United States Constitution, and in a common conspiracy of all of the defendants to this action to deny this Plaintiff his Federal Civil Rights and Federal Constitutional Rights."

Approximately midway in his Amended Complaint, the plaintiff avers, somewhat interestingly, "that the defendants

in the case at Bar would be liable for Common law tort damages."

The sole *ad damnum* averment of the amended complaint is copied in full, as follows:

"As a direct and proximate result of the aforesaid acts of the defendants, and each of them, the plaintiff, Paul E. Rhodes has suffered great pain and mental anguish, from then until now and will continue to so suffer in the future; and he has lost and will in the future lose large sums of money by reason of having been greatly humiliated and held up to public scorn and derision as a result of the foregoing acts of the defendants, and lost the sum of $4,-200,000.00 he would have recovered in a jury trial of said action Civil Case No. 01322 in the United States District Court of Nebraska. That Plaintiff is an attorney at law and contempt of court is not a crime in the state of Nebraska."

The following sentence concludes the Amended Complaint:

"That all of the aforesaid acts above mentioned in this complaint were done by the defendants under color of state law, state statute, ordnance (sic) or regulation."

The prayer of the Amended Complaint,

"demands judgment against the defendants and each of them, jointly and severally, in the amount of eight million four hundred thousand dollars ($8,400,000.00), further demanding punitive damages against the defendants and each of them, jointly and severally, in the amount of four million two hundred thousand dollars ($4,200,000.00) and the costs of this action; and he further demands such other relief as this court deems just, proper and equitable."

It has appeared to be prudent—to an adequate understanding, perhaps, necessary—thus exhaustively to take notice of the allegations of the amended complaint. Those allegations are the material towards which the motions now pending are severally directed. They must also be kept in view in their entirety, both on the score of the impact upon them of the plaintiff's personal background, education and professional career, and for their relation to earlier comparable litigation presented here at the behest of the plaintiff (*vide et supra et infra*), and to a yet pending suit by him instituted in this court during the pendency of this action (*vide infra*).

To a reasonable and allowable extent, this court may also evaluate the present litigation in its context, of which a part is identified in the amended complaint itself, thus by the plaintiff; a part is available in the records and files of this court; and a further portion is reflected in reported rulings of the Supreme Court of Nebraska.

The amended complaint makes frequent allusion to Civil Case No. 01322 in this court. Those references are to Rhodes v. Houston, D.C., 202 F.Supp. 624, affd. 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, with which this court will shortly be concerned herein. Direction is also made in the amended complaint to certain litigation in the state courts of Nebraska, which the plaintiff conceives to be basic to this action. Reached by such references are Case No. 4819 in the District Court of Morrill County, Nebraska, in which the sentence of the plaintiff for contempt of court was pronounced, and case No. 6617 in the District Court of Cheyenne County, Nebraska, Rhodes v. Schulz, et al, the habeas corpus proceeding which, as plaintiff alleges, he instituted against the sheriff of Cheyenne County, Nebraska, to obtain his release from custody, after his arrest pursuant to the judgment theretofore pronounced against him in Civil Case No. 4819 in the District Court of Morrill County, Nebraska. The references to the state court cases lead the court to the somewhat related opinions of the Supreme Court of Nebraska in Rhodes v. Houston, 172 Neb. 177, 108 N.W.2d 807; Rhodes v. Crites, 173 Neb. 501, 113 N.W.2d 611; Rhodes v. Sigler, 172

Neb. 439, 109 N.W.2d 731; and McFarland v. State, 172 Neb. 251, 109 N.W.2d 397; and in the probably irrelevant Rhodes v. Star Herald Printing Company, 173 Neb. 496, 113 N.W.2d 658. And there is Rhodes v. Van Steenberg et al, presently pending in this court as Civil Case No. 01784, D.C., 225 F.Supp. 113.

Paul Rhodes is the sole plaintiff in this case and was the sole plaintiff in Case No. 01322, Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624, affd. 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed. 2d 719. Of the defendants to this action, Clarence A. H. Meyer, Cecil Brubaker, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston, Michael Linch, George Turner, Robert G. Simmons, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Brower, Richard M. Van Steenberg, Albert W. Crites, Ted R. Feidler, John Greenholtz and Maurice Sigler were defendants also in Case No. 01322, Rhodes v. Houston, supra, and Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Peter E. Marchetti, H. B. Evnen, J. Arthur Curtiss and George Lewis were not defendants in Case No. 01322 Rhodes v. Houston, supra. Defendants in Case No. 01322, Rhodes v. Houston, identified as The Maryland Casualty Company, Lumbermen's Mutual Casualty Company, Western Surety Company, Fidelity and Casualty Company of New York, Beatty, Clarke, Morgan & Murphy, and Samuel W. Dickerson, are not parties to this case.

In complete awareness of the hazard of oversimplification, the court now observes that the claim—or claims—advanced by the plaintiff in Case No. 01322, Rhodes v. Houston, supra, lies—or lie— at the heart of the claim tendered in the amended complaint in this action. The court has not failed to perceive that in Case No. 01322, the plaintiff undertook, with respect to his demand for a personal judgment for damages in terms of money,[9] to seek it in two equal sums, each of two million, one hundred thousand dollars, under separate counts or "causes of action," of which no part was there sought against any of the defendants,[10] Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh and Robert C. Brower, and that those two counts differ only in that the second count contains an explicit averment of a conspiracy among all of the defendants to that suit, except the seven last above named "with the purpose of impeding, hindering, obstructing, or defeating the courts of Justice of the State of Nebraska, with intent to deny to the Plaintiff Paul E. Rhodes equal protection of the laws and with the intent to injure him for enforcing or attempting to enforce his rights to equal protection of the laws the individual defendants planned and agreed to commit all of the acts alleged herein under the circumstances alleged herein," But in Case No. 01322, he also included a third and final count, wherein he alleged that the seven defendants last named threatened, as Justices of the Supreme Court of Nebraska, to "commit or suffer to be committed further violation of the civil rights, privileges and immunities of the plaintiff by causing his apprehension and incarceration in the Nebraska State Penitentiary at hard labor" and prayed for injunctive relief from this court against such imprisonment and against the violation of the plaintiff's rights guaranteed by the Constitution of the United States, such injunctive relief to be aimed at all defendants to such action, including the Justices of the state's Supreme Court.

9. There, in the aggregate sum of four million, two hundred thousand dollars, though, in this action, he prays for twice that sum, plus four million, two hundred thousand dollars as punitive damages.

10. Who, at the time of the institution of that action, were the Chief Justice and Associate Justices of the Supreme Court of Nebraska.

For all of the present purposes of the court, the plaintiff's inclusion as defendants in Case No. 01322, Rhodes v. Houston, supra, of the several defendant insurance corporations and the law partnership, Beatty, Clarke, Morgan & Murphy, and the Penitentiary business manager, Samuel W. Dickerson, may be disregarded. The insurance corporations were made defendants only as sureties upon the separate official bonds of sundry defendants to that action, who were public officers. Any significance they might have had in that litigation was dependent on the liability, or immunity from liability, to the plaintiff of the several principal obligors upon their respective bonds. And the opinion of Judge Van Pelt, along with the judgment in that action, demonstrates the triviality of the inclusion as defendants of Beatty, Clarke, Morgan & Murphy and Samuel W. Dickerson, and each or either of them. The court keeps in view the inclusion in that case of defendants who are also parties defendant to this one, and the inclusion in this action of the parties identified, supra, who were not parties to Case No. 01322.

To the court it appears to be quite impossible essentially to distinguish the claim set out in the amended complaint herein from the claim—or claims in combination—set out in Case No. 01322. Both demand the vindication of an alleged right of the same plaintiff and are rooted in a single prosecution, conviction, and sentence of him. Putting aside the insignificant defendants to Case No. 01322 mentioned in the last preceding paragraph, there is no presently material variety in the parties defendant to the two actions. Of the defendants to this action, who were not similarly placed in Case No. 01322, Dwain L. Jones, Gerald S. Vitamvas, Peter E. Marchetti, H. B. Evnen and J. Arthur Curtiss, and each of them, are free from any charge in the amended complaint of the commission of any individual act, and are charged, if at all, only in some language aimed at "all of the defendants." Averments touching acts, affirmative or negative, of the several defendants, Robert A. Nelson and George Lewis, are separately and briefly mentioned later herein. For the rest, both cases were, and the present one is, presented against the same defendants, that is to say, those already identified herein as common to both cases.

It is true that there is some difference in detail in the manner of plaintiff's declaration of his claim—or claims—in the two cases. The more significant of these are now mentioned.

Recalled again is the plaintiff's division in Case No. 01322 of his demand into three counts, two primarily for money judgments, and the third for injunctive relief, in contrast with the presence here of an amended complaint with demand for a money judgment in a single count. It is also to be observed, however, that both in the present amended complaint, and in each count of the complaint, in Case No. 01322, the prayer is and was both for a money judgment and, in broad language, for general equitable relief. Finally, the third count in Case No. 01322, in which the complaint was filed on September 21, 1961, was directed unmistakably at a single and particular problem which then confronted the plaintiff, his threatened and imminent return to the Nebraska State Penitentiary for the service of the sentence theretofore imposed upon him for contempt of court in Case No. 4819 in the District Court of Morrill County, Nebraska. After denial, on December 5, 1960 of a motion for a new trial in that action, the plaintiff had sought review, on petition in error by the Supreme Court of Nebraska. On September 21, 1961, plaintiff's time for filing briefs incident to that review either had already expired, or was about to expire. He then knew either that he had failed, or that he was about to fail, to file such briefs. At any rate, he did so fail. On October 17, 1961, the mandate of the Supreme Court of Nebraska was executed and issued declaring the dismissal of such "error proceedings" "for failure to file briefs under the provisions of Rule 15" "and remanding the

case" "to you the said district court, in order that such proceedings may be had therein as according to right and justice and the laws of the State of Nebraska ought to be had." That meant, and foreshadowed, the execution of the sentence. And it was to intercept that already imminent consequence that the plaintiff, on September 21, 1961, expressly included in his complaint in Case No. 01322, filed only twenty-six days before the entry of the mandate, its Count III and its prayer for injunctive relief, including the issuance of a restraining order. On September 22, 1961, after due hearing in which the plaintiff personally participated, this court, acting through Judge Van Pelt, denied and overruled the application for restraining order. And by order, dated January 29, 1962, with a detailed explanatory opinion filed two days later, the complaint was dismissed in its entirety, (*vide infra*), thus also denying any injunctive relief.

While the complaint in Case No. 01322 alleged, and the amended complaint in this case alleges, the creation some time prior to November 21, 1960, and the existence, of a conspiracy to deprive the plaintiff of his rights guaranteed under the Constitution of the United States, especially the right to the equal protection of the laws, there is an observable difference between the two actions in the manner of the identification of the "conspirators." Despite some ambiguity, it is concluded that the second count of the complaint in Case No. 01322 charged the conspiracy to have been erected between all of "the individual defendants excepting only the Justices of the Supreme Court." [11] But, by paragraph IV (*vide supra*) of the amended complaint in the present action, the conspirators are identified as "Richard M. Van Steenberg, Clarence A. H. Meyer, Dwain L. Jones, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Virginia A. Schuetz, Leo Knudtson, Carl Sanders, Norval Houston,

Michael Linch, George Turner and Albert W. Crites." There are, thus, relatively minor differences in the identification of the alleged conspirators, partly accounted for by the variety between the two cases, already noted in respect of the parties defendant. But the conspiracy alleged, if one existed, was single and the same in both of the cases. And the court also observes that in the amended complaint, there are allegations that defendants, other than the conspirators, committed certain of the alleged acts against the plaintiff in furtherance of the conspiracy, that, with the design of infusing the conspiratorial element into their acts.

▮ Attention is once more directed to paragraph III of the amended complaint. It is not quoted again. But notice is taken of its allegation that the defendants, Clarence A. H. Meyer, Cecil Brubaker, Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Rush Clarke, James L. Macken, Peter E. Marchetti, George Turner, Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Brower, Richard M. Van Steenberg, Albert W. Crites, Ted R. Feidler, H. B. Evnen and J. Arthur Curtiss were, at all times pertinent, members of the "Nebraska State Bar, Nebraska State Bar Association to practice law by the Supreme Court of Nebraska." That inducing statement is followed by the assertion that all of their alleged actions "were under color and authority of their office as attorney at laws of the State of Nebraska, and the Nebraska State Bar Association, an official part of, organ of, and division of the State of Nebraska." That final averment is not a pleading of fact but the advancement of the plaintiff's own conclusion of law. And, as such, it is confused, mistaken and wholly invalid. Respecting the creation of the Nebraska State Bar Association, see In re Integration of the Nebraska State Bar Association (September 20, 1937) 133

---

11. That the averment is thus limited is confirmed by the prayer, which asks for no judgment for damages under Count I or Count II, and only for equitable relief under Count III, as against the Justices of the Supreme Court.

Neb. 283, 275 N.W. 265, 114 A.L.R. 151; State ex rel. Nebraska State Bar Association v. Merten, 142 Neb. 780, 7 N.W.2d 874, 877. In the latter opinion, the state's Supreme Court, by which Nebraska's Bar had recently theretofore been integrated, supra, discussed briefly and partially the effect of such action. Shortly stated, in Nebraska, notwithstanding the integration of the Bar, attorneys at the bar of the state remain—as they theretofore always had been—"officers of the court." But they are in no wise officers of the State of Nebraska, or of any governmental subdivision of such state. If, therefore, as seems rather probable, the plaintiff undertakes, by paragraph III of his amended complaint, to attribute to every wrongful professional act by a member of the Nebraska State Bar Association, the quality of an act done under color of authority as an officer of the State of Nebraska, and thereby to invoke the jurisdiction for the vindication of the violated right, of the United States District Courts under the Civil Rights Act, he is leaning on a broken reed. The notion is simply absurd. Though in a presently distinguishable setting, the writer hereof recently had occasion to consider certain aspects of the functioning of the Nebraska State Bar Association in Niklaus v. Simmons (D.C.Neb.) 196 F.Supp. 691. That opinion will be cited later herein to a point in respect of which it is considered to have pertinence. But it may be that through paragraph III, supra, plaintiff intends to offer the position that by virtue of the integration of the state's bar, and the membership of all of its active attorneys in the Nebraska State Bar Association, actionable liability for the wrong of every erring lawyer is imposed upon the Association—or even directly upon every other member of the Association. Such a view has, indeed, been advanced. But it is without virtue. And it is not believed that that is the thrust of the plaintiff's importation into this litigation of the Association's existence.

The court observes, too, that in addition to the issues directly tendered to the court by the pleading for determination in Case No. 01322, Rhodes v. Houston, supra, the amended complaint in this action alleges the procurement and use of the allegedly false affidavit of H. Snyder respecting service of notice on the plaintiff in Case No. 4819, District Court of Morrill County, Nebraska. To the extent of its use in Case No. 4819, in the District Court of Morrill County, Nebraska, it was matter for submission to Judge Van Pelt in Case No. 01322, Rhodes v. Houston, supra, for it was initially used in the state court in November, 1960. But it is also and principally advanced here in support of the contention that by its use in Case No. 01322, fraud was practiced upon this court and Judge Van Pelt, and later and on appeal, upon the Court of Appeals, Eighth Circuit, and the Supreme Court of the United States. Of the same nature are the allegations respecting the affidavits of John Greenholtz and Maurice Sigler, which it is charged, in Case No. 01322, were used both in this court and on appeal, and also respecting allegedly false statements in the appellees' briefs and record on appeal, and the oral statements of the defendant, Robert A. Nelson, before the Court of Appeals, Eighth Circuit. The features mentioned in this paragraph were not, indeed, contentions made up and formally tendered to Judge Van Pelt as primary issues in the case before him. But the question remains whether they were not so completely interwoven with the then pending litigation before this court, and the appellate forums, as to be foreclosed by the ruling in Case No. 01322. That question will be adverted to later herein.

In approaching a final ruling on the pending motions to dismiss, disposition may be made, with only brief comment, of several contentions which have had the court's consideration. In this course, those conclusions that are the more controlling will be reserved for later announcement.

■ Without explicit identification, the defendant, Robert A. Nelson, ap-

pends to his motion to dismiss (filing 26) a motion to strike, at least as against him, paragraphs XIX, XXI and XXIII of the amended complaint, on the ground that they are scandalous and impertinent, particularly as to the moving party. The court is denying and overruling that request in all its parts. Such action does not imply an unqualified approval of the challenged paragraphs in their entirety. Actually, it is difficult to arrive at an understanding of precisely what, if anything, the plaintiff charges against Mr. Nelson in paragraph XIX. He seems never to have reached in it the point towards which he started. In paragraph XXI the allegation that the defendants "lied" to the Court of Appeals in language appearing on page 64 in their brief is inelegant and savors more of the barnyard than of the court room. But the court, though not edified by such epithets, is also not confused by them. Such paragraph finally discloses the material in the brief at which it is aimed. And that is what matters. Paragraph XXIII is blunt in its attribution of falsity in fact and deception in motive, to Mr. Nelson's oral response to a question from the Court of Appeals. But it discloses the pleader's position without discreditable language; and the position, whether well taken or not, is one he may legitimately take. The court holds only that the challenged material, under proper judicial supervision, could not harm any defendant. In his charge to a jury, and at other points in litigation, a judge may—sometimes must—soften the asperity of a litigant's pleading. He should not, with any regularity, be called upon to fumigate it.

As has already been indicated, each of the motions shown as filings 26 27 and 29 assigns, as a ground for dismissal of the amended complaint, the position that it contains all of the fatal defects of the original complaint which the court struck from the files in harmony with an explanatory memorandum (filings 24 and 23). While the motions to dismiss are all now being sustained, such action is not premised upon that position. And it is not believed to be well taken. The court considered (filing 23) that the complaint both failed to comply with Rule 8(a), Federal Rules of Civil Procedure, in respects which the court pointed out, and was scurrilous, scandalous and impertinent. The amended complaint followed. In reasonable measure, the scurrility, impertinence and scandalous features of the complaint were eliminated by the amended complaint. Admittedly, it is still not a model of a short and plain statement either of the grounds of jurisdiction, or as a showing that the plaintiff is entitled to relief. It fails in the test of cohesiveness, and obscurely takes several positions from undisclosed premises. But the court thinks that dismissal should not result from that probable inadequacy.

Each of the motions to dismiss assigns as a ground for its allowance the claim that the amended complaint is "scandalous, impertinent and vexatious." That contention has been respectfully considered; for decision touching it is not obvious or easy. The amended complaint, at several junctures, betrays evidence of hatred, bitterness and resentment on the part of its author. But it has rationally to be regarded in its context. It was prepared by one who is both a lawyer and the allegedly injured man. It speaks against the backdrop of the collapse of a recently promising—or at least hopeful—career, of inevitably hostile reaction, and of the impulse to retaliation. In such circumstances a rational tolerance must be exercised in the appraisal of the language whereby he who is injured, whether deservedly or wrongfully, declares his demand for retribution. He ought ordinarily not to be held to the same standard of restraint, which one would observe whose wounds were less galling. And the court has undertaken to believe that the plaintiff thinks himself to have been treated with unwarranted harshness, and to approach the language and manner of his pleading accordingly. So regarded, it is not fatally offensive. Proceeding thus, the court

declines to regard the amended complaint as scandalous, impertinent or vexatious.

Insofar as the several motions filed as numbers 27 and 29 assert the identity of the facts relied upon by the plaintiff in support of his claim advanced in the amended complaint with the facts supportive of his claims in Case No. 01322, Rhodes v. Houston, D.C., 202 F.Supp. 624, aff'd 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, and, upon that basis, invoke the application of the rule *res judicata,* their contention, and that of the other defendants upon the same subject, are given consideration shortly hereinafter.

Each motion to dismiss asserts as one of its supporting grounds that the plaintiff's claim asserted in the amended complaint is not within the protection of the Federal Civil Rights Act, or any other statutory or constitutional protection upon which plaintiff seeks to predicate his action. From the files in Case No. 01322, Rhodes v. Houston, supra, it appears that each motion to dismiss in that action also made a like assertion, and thereby challenged the court's jurisdiction. In the case last mentioned, Judge Van Pelt appears not to have made explicit determination upon the question thus presented, but rather to have passed upon the motions before him upon the questions of the adequacy of the complaint to state a claim supporting relief, and the related immunity to suit of the defendants. Confronted with a like situation, the court is presently pursuing a similar course. But it must not be understood as rejecting the jurisdictional position of the moving defendants, or as minimizing its vital significance. It is an important, and probably a vital, issue whose determination against the plaintiff would obviate the necessity of presently meeting any other problems now presented.[12] And the writer of this memorandum acknowledges grave doubt whether, even on paper, the plaintiff has brought himself under the jurisdictional coverage of the Civil Rights Act, whether that Act ever has been or, even with its current liberal application, is, operative to confer jurisdiction on this court to determine, as between citizens of Nebraska, controversies that arise out of what is essentially a suit for damages on account of false imprisonment or malicious prosecution, or both.

The court comes, finally, to the important assertions of all of the movants,

b) that the amended complaint fails to state a claim upon which relief can be granted against the several moving defendants; and,

d) that each moving party is immune from liability under the Federal Civil Rights Act for the reason that the conduct attributed to him or her, as the case may be, to the extent to which, if at all, any such conduct occurred, was performed in his or her official capacity (as already indicated and as later shortly summarized) for conduct in which capacity immunity to suit exists.

In one sense, and to some degree, the former of those two assertions embraces the latter, and an affirmative resolution of the latter requires a like answer to the former.

By his amended complaint, his briefs, and his oral argument, the plaintiff has drawn to the court's attention, as vital to his claim, several items of already contested litigation, of which, to be sure, he has advanced his own interpretation. He has thereby caused the court to examine the public files in that litigation, and to pursue its studies upon each of the cases to its conclusion, or to its present position.

The plaintiff's citation of Case No. 4819 in the District Court of Morrill County, Nebraska, directs the court to Case No. 4772A, also in that court. An examination of the files in Case No. 4772A discloses that it was commenced on

---

12. For complete community of citizenship between the parties litigant thwarts the possibility of jurisdictional reliance on Title 28 U.S.C. § 1332(a) (1).

November 21, 1959 by the filing in behalf of the State of Nebraska, through Clarence S. Beck, its then Attorney General, in the District Court of Morrill County, Nebraska, of a complaint against Paul E. Rhodes (the plaintiff herein) charging Mr. Rhodes with the commission on February 8, 1959 in Morrill County, Nebraska, of the crime of arson by setting fire to and burning a store building used as a drug store, the property of Ray C. Neumann and Alma Neumann. On November 13, 1959, Mr. Rhodes appeared in open court, the defendant herein, Albert W. Crites,[13] presiding as District Judge, and on the reading to him of the complaint, demanded a preliminary hearing, which Judge Crites then set for December 4, 1959. Bond was then fixed at one thousand dollars. On December 4 and 5, 1959, pursuant to the earlier setting, supra, the preliminary hearing was held before the District Court of Morrill County, Nebraska, Judge Crites again presiding. Evidence was submitted and the parties rested; and the court found that "the crime charged in the complaint (had) been committed and that there (was) probable cause to believe that the defendant" (i.e. Mr. Rhodes) "(had) committed the offense," and entered an order committing him to jail and fixing bail at one thousand dollars. On December 7, 1959, Mr. Rhodes filed in that case an appearance bond in the penal sum of one thousand dollars. On January 11, 1960, the State of Nebraska, by Clarence S. Beck, its then Attorney General, filed in Case No. 4772A an information against Mr. Rhodes charging him with the crime of arson in like manner as he had been charged in the complaint, supra. On the same day, the sureties on his appearance bond surrendered Mr. Rhodes into the custody of Norval Houston, sheriff of Morrill County, Nebraska, and Mr. Rhodes was arraigned upon the information, Judge Crites again presiding, and refused to plead either guilty or not guilty. Whereupon, the court entered in his behalf a plea of not guilty, remanded Mr. Rhodes to the custody of the sheriff, and ordered his confinement in jail until he should furnish bail, which was again fixed at one thousand dollars. Pursuant to such order he was, by the sheriff of Morrill County, Nebraska, confined in the Scotts Bluff County jail, a course that was within the discretion of the sheriff. However, on January 15, 1960, Mr. Rhodes provided a cash bond in the sum of one thousand dollars. Case No. 4772A has never been tried upon its merits, and appears to be pending upon a motion by the defendant in it, Paul E. Rhodes, for its dismissal on account of the lapse without trial of more than three terms of court, within the reach of Section 29–1203, R.R.S.Neb.1943, Reissue of 1956. In fact, the motion seems to have been submitted and to be under the consideration of the court in which it is pending.

Case No. 4772A, in the District Court of Morrill County, Nebraska, has thus

---

13. Notice is here taken of the plaintiff's contention that Judge Crites was disqualified for service because, as is the fact, Morrill County is in the seventeenth judicial district of the state, and Judge Crites was—as he still is—the sole judge of the neighboring sixteenth judicial district. But the contention is utterly without legal merit. By section 12 of Article V of the Constitution of Nebraska, it is provided, and since 1920 has been, provided, that:

"The judges of the district court may hold court for each other and shall do so when required by law or when ordered by the supreme court."

And section 24–303 R.R.S.Neb.1943, Reissue of 1956, provides, in part, that:

"upon request of the judge or judges of [the district court of any county], any term in such district may be held by a judge of the district court of any other district in the state."

The custom within Nebraska of the flexible exchange of benches by the several district judges is familiar to every practicing lawyer of the state. And, as the constitution indicates (supra), a district judge may be compelled to serve beyond his own district in some instances where the law so requires, and on other occasions also upon direct order by the Supreme Court.

extensively been synopsized for the reason that it is basic to Case No. 4819 in that court, out of which, more immediately, this suit arose.

But Mr. Rhodes, either on or shortly before January 11, 1960, had instituted in the County Court of Morrill County, Nebraska,[14] a proceeding for a writ of habeas corpus against Norval Houston, the sheriff, to obtain his release from the custody of the sheriff under commitment in Case No. 4772A. And on January 11, 1960, in that habeas corpus proceeding, the County Court of Morrill County, Nebraska, Judge Robert D. McFarland presiding, granted a writ of habeas corpus, fixed January 27, 1960 as the time for final hearing thereon, and entered an order discharging and releasing Mr. Rhodes from the sheriff's custody on his personal recognizance. But, notwithstanding that order, the sheriff, later in the same day, took Mr. Rhodes before the District Court, in which the arraignment was then held, supra.

On January 27, 1960, the County Court of Morrill County, Nebraska, Robert D. McFarland, Judge Presiding, made and entered in the habeas corpus proceeding pending therein, supra, what it denominated as a "Bench Warrant and Complaint" of which a copy is set out in a footnote.[15] The "Bench Warrant and

14. In Nebraska, the several district courts are the state's courts of record of general jurisdiction. Each county also has a County Court, which, among its functions, has jurisdiction in matters of the probate of testaments, and the administration of the estates of deceased persons, and the guardianship of minors and incompetent persons, and possesses a limited jurisdiction in civil litigation, and in lesser criminal prosecutions, and the jurisdiction for the conduct of preliminary hearings in major criminal matters. It is also vested with jurisdiction to grant writs of habeas corpus, which jurisdiction is concurrently committed to the district courts, Chapter 29, Article 28, R.R.S.Neb.1943, Reissue of 1956; with this difference, however, that the district court is, by constitution and statute, accorded the jurisdiction to review on appeal, Section 25–1901 R.R.S.Neb.1943, Reissue of 1956, and Article V, Section 17, Constitution of Nebraska, or on writ of error, Section 25–1901, R.R.S.Neb.1943, Reissue of 1956, judgments in such cases of the County Court, Section 29–2823, R.R.S. Neb.1943, Reissue of 1956, State ex rel. Miller v. Cavett, 163 Neb. 584, 80 N.W. 2d 692. In the administration of the habeas corpus jurisdiction, which those two courts possess concurrently (as in other respects), the County Court is obviously a court inferior to the District Court. While not of presently controlling significance, it is observed that in counties within the population group which includes Morrill County, it is not necessary that the County Judge be—and the County Judge of that county in 1960 was not —an attorney at law.

15. Following is a true copy of the socalled "Bench Warrant and Complaint:"

"BENCH WARRANT

IN THE COUNTY COURT OF MORRILL COUNTY, NEBRASKA

| Paul E. Rhodes, Relator —vs— Norval Houston and Norval Houston Sheriff of Morrill County, Nebraska Respondent | BENCH WARRANT AND COMPLAINT |

STATE OF NEBRASKA } ss
COUNTY OF MORRILL }

TO Norval Houston, Sheriff of Morrill County, Nebraska:
Whereas, Albert W. Crites, after being duly advised that Paul E. Rhodes, the relator herein was at that time, and had been since an earlier hour on that same 11th day of January, 1960, released on his personal recognizance by the County Court of Morrill County, Nebraska, under a Writ of Habeas Corpus duly granted, ordered, and issued by said county court and duly returned and endorsed by the respondent herein upon delivering the body of the relator in before and to said county court, did at and within the aforesaid county of Morrill, then and there being, order the confinement of the body of Paul E. Rhodes, aforesaid relator herein, at a purported arraignment held by said Albert W. Crites while purporting to act as district judge in the District Court of the 17th Judicial District in and for Morrill County, Nebraska in the court room in the

Complaint" was not served. And on February 1, 1960, Judge McFarland entered in his court an order "withdrawing" it.

That habeas corpus proceeding was appealed to the District Court of Morrill County, and in the appellate proceeding, Norval Houston, the sheriff, moved for the dismissal and quashing of the proceeding on the ground that the County Court had no jurisdiction to entertain it. But, on April 26, 1960, hearing was had on that motion, and the District Court, Judge Edmund Nuss of the tenth judicial district presiding, found that the County Court did have jurisdiction over the habeas corpus proceeding, and denied and overruled the motion for its dismissal. (see, however, McFarland v. State, infra)

But, on July 29, 1960, Case No. 4819 in the District Court of Morrill County, Nebraska, was instituted by the State of Nebraska against Mr. Rhodes, by the filing therein by Clarence S. Beck, then Attorney General of Nebraska, of an Information for Contempt of Court. The information, briefly summarized, disclosed the pendency of Case No. 4772A against Mr. Rhodes; the pendency on and before January 27, 1960 of the habeas corpus proceeding in the County Court of Morrill County, Nebraska, and Mr. Rhodes' expectation that such final judgment as might be entered in it would be appealed to the District Court (as it later was, supra); the participation as presiding judge in Case No. 4772A of Judge Crites; and charged that on January 27, 1960, Paul Rhodes

"willfully, unlawfully and contemptuously and with the intent to obstruct the proceedings and hinder the due administration of justice in the above entitled action, suit, pro-

County Court House in Morrill County at Bridgeport, Nebraska, on January 11, 1960.

And whereas the aforesaid purported arrignment in the District Court was contrary and in violation of the statutes and lawes and constitution of the State of Nebraska and the Constitution of the United States, and was further void and a nullity and coram non judice.

And Whereas, as a consequence of the aforesaid purported arraignment and purported orders entered therein, the relator herein was willfully and unlawfully deprived of his liberty heretofore granted him at the pleasure of this court, and the relator herein was willfully and unlawfully confined in the county Jail of Morrill County, Nebraska, by Norval Houston Sheriff of Morrill County, Nebraska, acting under purported orders issued by said Albert W. Crites during the course of or as a result of the aforesaid purported arrignment.

And whereas the relator herein was transported out of this county of Morrill by Norval Houston, Sheriff of Morrill County, acting under purported authority of purported orders issued by said Albert W. Crites during the course of or as a result of the aforesaid purported arraignment, and was confined in the County Ja9l of another county under the purported authority of purported orders issued by said Albert W. Crites during the course of or as a result of the aforesaid purported arraignment, at

the instruction of John Doe and Richard Roe, true and real names unknown, all contrary to and in violation of the Statutes and laws and the Constitution of the State of Nebraska and the Constitution of the United States, and all for the purpose of taking and confining the body of the relator herein beyond the jurisdiction of this court.

And whereas the aforesaid Albert W. Crites by his actions and purported orders aforesaid did willfully and unlawfully and contemptuously disobey and offer resistance to the lawfuly processes and orders of this court and did willfully and unlawfully and contemptuously attempt to obstruct the proceeding and hinder the due administration of justice in suit pending before this court, and did tend to interrupt proceedings, all on January 11, 1960, at and within Morrill County, Nebraska, except after the removal of the body of relator herein, Paul E. Rhodes, from Morrill County, Nebraska.

You are therefore commanded to forthwith pursue and arrest said Albert W. Crites and bring him before this court, and the Judge thereof, Robert D. McFarland, to be dealt with according to law.

Given under my hand and the seal of the County Court of Morrill County, Nebraska, this 27th day of January, 1960, at Bridgeport, Nebr.

BY THE COURT

(SEAL) Robert D. McFarland"

ceeding and process then pending in and before this court entitled The State of Nebraska, plaintiff vs. Paul E. Rhodes, defendant, and in any and all other actions, suits, proceedings, and processes then pending in and before this court, or which might thereafter be pending in this court in which the defendant Paul E. Rhodes was in any way involved, and to lessen and destroy the authority, dignity and integrity of courts generally and particularly this court, and to bring the courts of the State of Nebraska generally, and particularly this court, and the Honorable Albert W. Crites, the judge thereof, into public disrepute, and to scandalize them and cause the public to lose confidence in courts generally, and particularly in this court, and to intimidate this court, and the Honorable Albert W. Crites, the judge thereof, and to coerce this court and the Honorable Albert W. Crites, the judge thereof, to decide issues and matters in favor of the defendant Paul E. Rhodes, and to force and bring about by coercion, intimidation, threats and other acts the retirement of Albert W. Crites as a judge of this court and the substitution of another judge or judges in all matters pending in this court in which Paul E. Rhodes was in any way involved, and to prevent the Honorable Albert W. Crites from presiding as a judge of this court by incarcerating him in jail, and to deprive the State of Nebraska of its right to a fair trial in the above mentioned cases, actions, suits, proceedings and processes by a tribunal free and untrammeled by attempts at coercion, intimidation and threats of public odium and derision, did willfully, unlawfully and contemptuously attempt to obstruct the proceedings and hinder the due administration of justice in this court generally, and in the above mentioned actions, suits, proceedings and processes in particular, by doing and performing the acts and things hereinafter set forth and charged:

"That with the intent above alleged, and in the attempt above alleged, the defendant did on and immediately before the 27th day of January, 1960, in Morrill County, Nebraska, conspire with and aid, abet, assist, procure, counsel, persuade and cause Robert D. McFarland, who was the County Judge of Morrill County, Nebraska, to prepare, write, sign and issue out of the County Court of Morrill County, Nebraska, and to deliver to the Sheriff of Morrill County, Nebraska, a certain 'Bench Warrant and Complaint' of which the following is a copy:

(Here follows a true copy of the "Bench Warrant and Complaint", which is not now repeated.)

"and to threaten to incarcerate the Honorable Albert W. Crites, a judge of this court, in jail for the purpose of preventing him from performing his duties as district judge generally and as a judge of this court, all contrary to the authority and integrity of this court and against the dignity thereof."

On August 1, 1960, a writ for the attachment of the body of Mr. Rhodes for contempt under the immediately foregoing information was issued out of the District Court of Morrill County, Nebraska, pursuant to an order under that date of such court, the defendant herein, Richard M. Van Steenberg, Judge presiding, which writ was duly executed. On the same day, Paul Rhodes was brought before the court, was granted one month to answer the information and make his defense in anticipation of a trial, whose date was later to be fixed, and was released from custody,

subject to the further order of the court. Mr. Rhodes made and filed his answer to the information. He also tendered numerous motions and other pleadings designed to procure the termination of the contempt proceeding against him, Case No. 4819, which were determined adversely to him and, though interesting, need not be synopsized here. Trial on the merits of the contempt proceeding was held by the District Court of Morrill County, Nebraska, the defendant, Richard M. Van Steenberg, Judge presiding, on September 6, and 7, 1960, and the case was taken under advisement by the court. However, further hearing being required in the proceeding, Mr. Rhodes was served on September 24, 1960 with notice that it would be had on October 10, 1960 at 10:00 o'clock A.M. Motions by Mr. Rhodes for continuance ensued, some continuances were granted, or at least suffered; but on October 31, 1960 such hearing was set for November 21, 1960 at 10:00 o'clock A.M. Mr. Rhodes filed further motion for continuance with supporting showings. On November 21, 1960, the then pending motion for continuance was overruled, the further hearing was had, and the adjudication of contempt and sentence, supra was pronounced and entered. Motion for new trial was tendered, and on December 5, 1960 was heard and overruled. Mr. Rhodes, though notified of the hearings on November 21, 1960 and December 5, 1960, failed to appear or participate in either of them.

From the judgment of November 21, 1960, and the denial on December 5, 1960 of motion for new trial, Mr. Rhodes appealed to the Supreme Court of Nebraska. That court, pending the appeal, suspended the sentence, upon which sentence, however, on November 25, 1960, the clerk of the District Court, defendant Virginia A. Schuetz, had already issued a commitment, under which Mr. Rhodes was delivered to the penitentiary on January 23, 1961. Bail was fixed on August 15, 1961 at three thousand dollars, and was given and approved on August 21, 1961. On October 17, 1961, the appellant, having failed timely to file briefs, the appeal was dismissed, and the mandate attesting such dismissal was entered, which was filed on the following day in the office of the Clerk of the District Court of Morrill County, Nebraska. Commitment was issued by the defendant, Virginia A. Schuetz, the clerk of that court, on October 30, 1961, and on November 2, 1961, Mr. Rhodes was delivered pursuant to it to the Nebraska State Penitentiary. On November 11, 1961, the District Court of Morrill County, John H. Kuns, Judge of the thirteenth judicial district, presiding, after due hearing, denied and overruled motions by Mr. Rhodes for recall of the commitment, and for stay of execution pending application for a writ of certiorari to the Supreme Court of the United States.

It is now mentioned that, incident to Case No. 4819 in the District Court of Morrill County, Nebraska, an accusation of contempt of court, on account of the socalled "Bench Warrant and Complaint" already discussed, was made on February 5, 1960 in that court against Robert D. McFarland, the County Judge who had presided over the habeas corpus proceeding, and entered and filed the "Bench Warrant and Complaint," charging him with contempt of court for his part in the "Bench Warrant and Complaint" incident. The District Court of Morrill County, upon trial, found and adjudged McFarland to be guilty as charged of contempt, and imposed sentence upon him. McFarland appealed to the Supreme Court of Nebraska, which, on May 26, 1961, filed its opinion in McFarland v. State, 172 Neb. 251, 109 N.W.2d 397, and affirmed the judgment and sentence of the trial court. Reference is now made to the opinion in that case, which sternly declares the nullity of the habeas corpus proceeding before McFarland,

and of his "Bench Warrant and Complaint." Naturally, this court does not give present heed to the language of the writer of that opinion fastening responsibility for the McFarland "Bench Warrant and Complaint" upon the present plaintiff. Whether Mr. Rhodes was so guilty was determined by the trial court in his own trial upon the contempt charge against him, supra. But the McFarland opinion is instructive touching the invariably contemptuous quality of what was demonstrably done, whether the present plaintiff procured it, or participated in it or not. It is cited here for that purpose. But the thought is further offered that it necessarily operates also to demonstrate the complete fallacy of the conclusion of Judge Nuss in his ruling under date of April 26, 1960, supra. So far as that conclusion affirmed the broad general existence in the county court of a jurisdiction over habeas corpus proceedings, concurrent with that of the District Court, it was on solid ground. But it wholly overlooked the objective of the particular habeas corpus proceeding then under scrutiny, namely the frustration of the District Court in its proceeding in a criminal prosecution for a felony, in which the District Court's jurisdiction had unquestionably attached.

 That the ultimate common ground for all of the pending motions to dismiss the amended complaint is the asserted failure of that pleading to state a claim upon which relief can be granted to the plaintiff as against the several moving defendants has already been observed. It results that, to that extent, the motions are severally framed within Rule 12(b) (6), Federal Rules of Civil Procedure. In the administration of that rule, it has been authoritatively declared that a motion to dismiss a complaint on the ground just indicated should be granted and sustained if, but

only if, the complaint at which it is directed, construed liberally in favor of the complaining plaintiff, and with the allowance of all reasonable inferences supportive of his pleading, is so far insufficient that it may not reasonably be supposed that, under it, competent evidence could be adduced which would support any judgment in favor of the plaintiff and against the moving defendant. Despite some inexact judicial observations, and occasional loose legal writing, the motion to dismiss provided for by Rule 12(b) (6) is not a surreptitious reincarnation of the former general demurrer, which was expressly abolished by Rule 7(c). That abolition meant what it said. Leimer v. State Mutual Life Assurance Company of Worcester, Mass. (8 Cir.) 108 F.2d 302; Sparks v. England (8 Cir.) 113 F.2d 579; Louisiana Farmers' Protective Union, Inc. v. Great Atlantic and Pacific Tea Company of America (8 Cir.) 131 F.2d 419; Musteen v. Johnson (8 Cir.) 133 F.2d 106; Publicity Building Realty Corporation v. Hannegan (8 Cir.) 139 F.2d 583; Cool v. International Shoe Company (8 Cir.) 142 F.2d 318; Dennis v. Village of Tonka Bay (8 Cir.) 151 F.2d 411; Tobin v. Chambers Construction Company (D.C. Neb.) 15 F.R.D. 47; Smedley v. Guy F. Atkinson Company (D.C.Neb.) 12 F.R.D. 355. It must be understood that the court in the present ruling has accorded to the plaintiff the full liberality to which he is thus entitled in the appraisal of his amended complaint, and of its validity in the face of the presently pending motions. This court has consistently so administered Rule 12(b) (6).

Each moving defendant, in supporting his or her motion to dismiss, places primary emphasis upon the contention that for actions by him or her performed in the course and exercise of the duties of his or her official position in the government of Nebraska, he or she is immune to a suit of the present character. In

aid of the consideration of that point, a regrouping by official classification of the several defendants is now offered. It follows:

| OFFICIAL POSITIONS | DEFENDANTS |
|---|---|

**1. JUDGES OF COURTS OF RECORD:**

a) Justices of Supreme Court — Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh, Robert C. Brower

b) Judges of District Court [16] — Richard M. Van Steenberg, Albert W. Crites

**2. ATTORNEYS OF THE STATE OR SUBDIVISION THEREOF:**

a) Attorney General of Nebraska — Clarence A. H. Meyer (since January 5, 1961)

b) Deputy Attorney General of Nebraska — Clarence A. H. Meyer (until January 5, 1961), Gerald S. Vitamvas (part of the time)

c) Assistant Attorney Generals, or Special Assistant Attorney Generals, of Nebraska — Cecil Brubaker, Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas (part of the time), Rush Clarke

d) County Attorney (i. e. County Prosecutor) — James L. Macken

**3. CLERKS OF COURTS OF RECORD:**

a) Clerk of the Supreme Court — George Turner

b) Clerk of the District Court of Morrill County — Virginia A. Schuetz

**4. STATE OR COUNTY PEACE OFFICERS:**

a) Sheriff of Morrill County — Norval Houston

b) Deputy Sheriff of Morrill County — Michael Linch

c) Members of Nebraska Safety Patrol — Carl Sanders, Leo Knudtson

---

16. Actually, during a part of the interval embraced within the litigation, the defendant, Ted R. Feidler, was, supra, as he now is, judge of the District Court of the Seventeenth Judicial District of Nebraska, within which Morrill County is located. But it does not appear that he is charged with any wrongful judicial action as against the plaintiff. He appears to be charged with action as a lawyer, if he be charged with any act at all.

5. OFFICERS OR EMPLOYEES OF NEBRASKA STATE PENITENTIARY:

a) Warden Maurice Sigler

b) Deputy Warden John Greenholtz

c) Physician George Lewis

6. ATTORNEYS AT LAW, MEMBERS OF NEBRASKA STATE BAR ASSOCIATION:

Clarence A. H. Meyer
Cecil Brubaker
Dwain L. Jones
Robert A. Nelson
Gerald S. Vitamvas
Rush Clarke
James L. Macken
Peter E. Marchetti
George Turner
Robert G. Simmons
Edward F. Carter
Fred W. Messmore
John W. Yeager
Harry A. Spencer
Leslie Boslaugh
Robert C. Brower
Richard M. Van Steenberg
Albert W. Crites
Ted R. Feidler
H. B. Evnen
J. Arthur Curtiss

---

The question first confronted by the court is whether the several moving defendants are respectively immune to a claim of the character here made on account of alleged wrongs done by them to a claimant in the course and performance of the duties of their respective offices. Its answer is to be found in the identification of those offices in the light of their respective functions in the administration of justice in the courts of the state.

Conspicuously involved are the claims against (1) seven Justices of the Supreme Court of Nebraska, and two judges of the District Court, which is a court of record and of general jurisdiction; (2) the attorney general, two deputy attorney generals, and five assistant attorney generals (including special assistants) of Nebraska, and the county attorney of Morrill County, Nebraska; (3) the clerk of the Supreme Court of Nebraska and the clerk of the District Court of Morrill County, Nebraska; (4) the sheriff and the deputy sheriff, of Morrill County, Nebraska, and two members of the Nebraska Safety Patrol; and (5) the warden, the deputy warden, and a physician in the employ, of the Nebraska State Penitentiary.

The court again directs attention to Rhodes v. Houston (D.C.Neb.) 202 F. Supp. 624, affd. 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed. 2d 719, and, in particular, to the characteristically careful and scholarly and notably persuasive opinion in it of Judge Van Pelt of, and then speaking for, this court. In affirming the ruling announced

in that opinion, the Court of Appeals, Eighth Circuit, advisedly said, supra:

> "The exhaustive opinion of the trial court (Judge Van Pelt) published at 202 F.Supp. 624 contains a careful and detailed analysis of the essential facts. Judge Van Pelt's well considered conclusions, which we believe to be correct and with which we concur, are supported by a wealth of authority. On the basis of said opinion, the judgment of the trial court is affirmed."

The writer of this memorandum heartily joins in that appraisal of the opinion of Judge Van Pelt.

 The presently moving defendants, pointing to Rhodes v. Houston, supra, argue that it should be regarded as dispositive in their favor of the pending motions for dismissal, under the rule *res judicata*. Opposing that position, the plaintiff principally insists that the rule may not presently be invoked because the ruling in Rhodes v. Houston, supra, was made, not after a trial of that action upon the merits but (comparably with the court's current position) in the course of the determination of sundry motions to dismiss the complaint. He seeks thereby to advance the position that the judgment in Rhodes v. Houston, supra, was "not on the merits," and, on that account, was inoperative under the rule *res judicata*, to any extent or in behalf of any party or parties defendant. That a judgment, to constitute a bar on the principle of *res judicata* must be on the merits is broadly true. Cromwell v. County of Sac, 94 U.S. 351, 24 L.Ed. 195; Shepard v. City of Friend, 141 Neb. 866, 5 N.W.2d 108. But it does not follow that, to the applicabilty of the principle, the earlier judgment must have rested upon a formal and final trial of the action in which it was made and given. For a judgment or decree entered on a general demurrer (where such a pleading is tolerable), or on a motion to dismiss (within the practice of this court) for failure to state a claim on which relief can be granted against the moving defendant, is no less effective as *res judicata* in respect of issues resolved by it than a judgment or decree rendered after final trial and on proof. Hickey v. Johnson (8 Cir.) 9 F.2d 498; Vinson v. Graham (10 Cir.) 44 F.2d 772; Divide Creek Irrigation District v. Hollingsworth (10 Cir.) 72 F.2d 859, 96 A.L.R. 937; Fowler v. Osgood (8 Cir.) 141 F. 20, 4 L.R.A.,N.S., 824; Brooks v. Arkansas-Louisiana Pipe Line Company (8 Cir.) 77 F.2d 965; United States v. Glidden Company (6 Cir.) 119 F.2d 235, cert. den. 314 U.S. 678, 62 S.Ct. 182, 86 L.Ed. 542; Billings Utility Company v. Federal Reserve Bank of Minneapolis (D.C.Minn.), 46 F. Supp. 691; United States v. 48.9 Acres of Land in Pike County, Ark. (D.C. Ark.) 85 F.Supp. 133; United States v. Bower (D.C.Tenn.) 95 F.Supp. 19; 50 C.J.S. Judgments § 643 et seq., p. 75 et seq.

 However, the reach of the doctrine *res judicata* has certain limitations. In its strict application, the doctrine of *res judicata* ordinarily extends only to facts and conditions and claims, as they existed at the time the judgment relied upon was rendered, and does not apply where there are changed conditions and new facts which did not exist at the time of the entry of such judgment. 30A Am.Jur. 379, Title Judgments, section 335. Generally, too, and subject to some exceptions, the doctrine of *res judicata* does not operate to affect either favorably or adversely the rights of those who are neither parties, nor persons in privity with a party, to the litigation in which the judgment relied upon is entered. 30A Am.Jur., 441 et seq., Title Judgments, section 393. In Rhodes v. Houston, supra, the order or judgment sustaining the several motions to dismiss, and dismissing the complaint (filing 76) was entered in and by this court (Judge Van Pelt presiding) on January 29, 1962. It foreshadowed the filing, shortly thereafter, of an explanatory opinion or memorandum; and that memorandum or opinion (filing 79) was filed on January 31, 1962. The opinion of the Court of Appeals, Eighth Circuit,

affirming this court's order or judgment was filed on November 29, 1962. And, after denial of certiorari, the affirming mandate, dated February 21, 1963 (filing 88), was filed on February 23, 1963. Before January 29, 1962, when Rhodes v. Houston, supra, was decided in this court, even before September 21, 1961, when it was filed, the initial confinement of Mr. Rhodes in the state penitentiary had been undergone, and had been terminated. It had extended, according to his averments, from January 23, 1961 to July 5, 1961. And it was by the plaintiff's complaint in Case No. 01322, Rhodes v. Houston, supra, made the very core of the claim there presented. More than that, by September 21, 1961, when the complaint in that case was filed, Mr. Rhodes' second confinement in the state penitentiary was imminently probable, supra, and its threatened accomplishment was made the material upon which the third count or cause of action in that case was formulated against the defendants, justices and clerk of the State's Supreme Court, with its prayer for injunctive relief against such anticipated confinement. Still further, shortly after the filing of Case No. 01322, and after Judge Van Pelt's denial on September 22, 1961 of a restraining order, Mr. Rhodes was again confined in the state penitentiary where, as he alleges, he remained until July 29, 1962. He, therefore, was, and for nearly three months had been, so confined, on January 29, 1962, when Judge Van Pelt entered the judgment in that case. Hence, his initial imprisonment was a completed fact, and his second imprisonment was in current progress when Judge Van Pelt's ruling was made. The last six months of Mr. Rhodes' second imprisonment, indeed, occurred after Judge Van Pelt's final ruling. But the basic fact of even that imprisonment was then in current

progress, and its threatened inception had earlier undergone the consideration of Judge Van Pelt, who had denied a prayer for its restraint, supra.

In that setting, this court would be on solid ground if it were to regard Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624 aff'd. 8 Cir., 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719 as dispositive adversely to the plaintiff herein, and in favor of all of the defendants hereto except Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Peter E. Marchetti, H. B. Evnen, J. Arthur Curtiss and George Lewis [17] and Robert G. Simmons, Edward F. Carter, Fred W. Messmore, John W. Yeager, Harry A. Spencer, Leslie Boslaugh and Robert C. Brower [18] upon all of the plaintiff's claim herein, insofar as it rests upon facts that existed when the ruling in Rhodes v. Houston, immediately, supra, was made.

But after thorough study of the present file, and of the factual history to which it directs the court, supra, it has been, and is, considered unnecessary to premise the present ruling either upon the doctrine of *res judicata,* or upon its related rule of estoppel by judgment, and more appropriate to poise it upon the application of the principle of *stare decisis.* In pursuing that course, Rhodes v. Houston, supra, is accorded persuasive significance, not as a mandatorily controlling prior adjudication of the same case—or the 'essential features of it— but rather because, as a matter of legal reasoning, it is correct. In support, therefore, of the instant ruling, the court now cites Rhodes v. Houston (D.C.Neb.) 202 F.Supp. 624, aff'd 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719, and, without individual recollection, the many opinions cited in it, and Judge Van Pelt's penetrating analysis of them. It cites also the somewhat earlier opinion of this court,

17. Defendants to this action who were not parties to Rhodes v. Houston, immediately supra.

18. The Justices of the Supreme Court of Nebraska, who, though parties defendant to Rhodes v. Houston, immediately supra, were not therein charged as liable in either of its first two counts in which alone the recovery of damages was sought.

through the present writer, of Niklaus v. Simmons (D.C.Neb.) 196 F.Supp. 691, and particularly the discussion (following an extended historical analysis appropriate to the facts of that litigation) appearing on pages 712 to 718 inclusive. The Niklaus case had to do with facts requiring special treatment, but its consideration of the central factor of immunity to suit has present pertinence. See also the authorities cited and discussed in it. They need not be repeated here.

As Judge Van Pelt determined in Rhodes v. Houston, supra, and in harmony also with the central thought of Niklaus v. Simmons, supra, the court now finds and concludes that all of the defendants within the description of (1) Judges of courts of record, including both the Justices of the Supreme Court of Nebraska and the District Judges, (2) state prosecuting attorneys, including the Attorney General of the State, its Deputy Attorney Generals and Assistant Attorney Generals (both regular and special), and the County Attorney of Morrill County, Nebraska, (3) clerks of the State Supreme Court and the District Court of Morrill County, Nebraska, (4) sheriff and deputy sheriff of Morrill County, Nebraska, and members of safety patrol and (5) warden, deputy warden, and medical attendant or officer of the Nebraska State Penitentiary are, and at all times involved herein were, immune to suit for acts by them, or any of them, done in the course of the execution and performance of the duties of their respective offices or positions. That being true, it necessarily results also that, as against them, the amended complaint fails to state a claim on which relief can be granted.

There remains for consideration the attempt of the plaintiff to recover against the many defendants identified, supra, as attorneys at law, and as members of the Nebraska State Bar Association. These include all of the prosecuting attorneys, the clerk of the Supreme Court, all of the Justices of that court, the two district judges, Ted

R. Feidler (who, actually, is now a district judge, supra, and, during a part of the time involved was the County Judge of Scotts Bluff County, Nebraska), and Messrs. Marchetti, Evnen and Curtiss. The thrust of that feature of the amended complaint seems to be the presentation of an assertion that a lawyer's membership in the state's bar— and in its judicially erected State Bar Association—itself constitutes an added and distinct basis of liability, quite beyond, and apart from, the impact upon liability of the public office, if any, in the government of the state, or any political subdivision of the state, which an individual defendant may occupy. As against those of the defendants who are lawyers, it undertakes both to impose liability and to find a basis of jurisdiction in this court (despite community of citizenship) upon the premise that membership in the bar of the state involves an official position in the state government or administration, and imposes the attributes of governmental operation upon every professional act of a member of the bar. With all possible respect to the pleader, it has simply to be declared that the position thus assumed is invalid, even absurd. Of course, the rejection of liability arising solely out of membership in the bar is a determination quite distinct from the court's conclusion that many of the lawyer defendants, occupying identified public offices all rooted in the administration of justice, are, by the settled law, immune to suits of the present character, supra, for acts by them respectively performed in the performance of the duties of their offices.

From the foregoing observations upon the controlling issues in the present case, the court has to conclude that the plaintiff's amended complaint, failing to state a claim on which relief against the several moving defendants, or any of them, can be granted, must be dismissed. However, brief mention should be made of certain aspects of the case upon which counsel have presented conflicting positions. None of them re-

quires a conclusion different from that already announced.

In his opinion in Case No. 01322, Rhodes v. Houston (D.C.Neb.), supra, Judge Van Pelt disclosed and abundantly justified his pursuit in public records of material calculated to explain or clarify several of the averments of the complaint in that case. It will be obvious that in arriving at the present ruling the court has made a like study, in part, of the same material examined by Judge Van Pelt, but, in some measure of other essentially similar items. That study is justified upon the same reasoning which Judge Van Pelt advanced in support of his own labors. In several respects, it has also been indicated, and in the interest of thoroughness required, by the plaintiff's explicit allusion in his amended complaint to specific litigation allegedly underlying his claim, but without detailed reflection of the recorded history of that litigation. Such an allusion necessitates research into the matter thus introduced, to the end that the actual significance of the amended complaint may be clarified. A failure to pursue such a study would deprive the ensuing ruling of essential reality.

It may accurately be said that the claim which the plaintiff undertakes to make out in his amended complaint herein was—and is—the claim which, in multiple counts, he tried to assert in Case No. 01322, Rhodes v. Houston (D.C. Neb), supra, plus two features which, briefly reflected, are (a) the completion after the ruling of Judge Van Pelt, of his imprisonment and (b) the use of alleged misstatements, both in affidavits and in briefs and oral argument, which is charged to have occurred in the course of the Houston case itself. But the completion of the imprisonment added only in degree, not in kind, to the claim the plaintiff tendered in that case. And, touching the alleged misrepresentations in the course of that litigation, it is sufficiently observed that the Houston case itself provided the occasion, the framework, and the forum, in which that conduct, if it occurred, should have been challenged and thwarted. Its reservation for the present occasion savors too strongly of "second guessing."

Notice is again taken of the fact that of the present defendants, Dwain L. Jones, Robert A. Nelson, Gerald S. Vitamvas, Peter E. Marchetti, H. B. Evnen, J. Arthur Curtiss and George Lewis, were not parties to the Houston case. But, obviously, the members of the Attorney General's personnel, Dwain L. Jones, Robert A. Nelson and Gerald S. Vitamvas, possess the same immunity to suit which was accorded to members of that office in Case No. 01322, Rhodes v. Houston (D.C.Neb.), supra. And George Lewis, the prison physician, has the same protection as the Warden, Deputy Warden and Guard. Respecting Peter E. Marchetti, H. B. Evnen and J. Arthur Curtiss, beyond the wholly unparticularized averment in the most general terms of their participation in some of the repressive treatment of the plaintiff in furtherance of a conspiracy in which not one of them is alleged to have been a participant, no possible wrong is alleged to have been done by them, or any of them. Clearly no actionable wrong is alleged against any of them.

▇▇▇▇ Plaintiff complains that the several writs for commitment were issued by the clerk of the District Court without a special direction by the court or judge of the court for such issuance. One such commitment was issued promptly after the entry of the judgment and sentence. In issuing that writ of commitment thereon, the clerk merely complied with her statutory duty. Section 25–2204, R.R.S.Neb.1943, Reissue of 1956; State ex rel. Hansen v. Carrico, 86 Neb. 448, 125 N.W. 1110. The other was issued promptly after the coming down of the mandate on dismissal of the appeal. Concerning it, plaintiff complains that no intervening order of the District Court was entered prior to the issuance of the writ of commitment. But since the mandate was operative as an affirmance, no intervening order by the District Court was necessary, and the writ was properly issued. State ex

rel. Noble v. Sheldon, 26 Neb. 151, 42 N.W. 335, Section 29–2305, R.R.S.Neb. 1943, Reissue of 1956.

 Asserted ingredients of plaintiff's claim are the refusal of the Warden of the Penitentiary, the defendant, Maurice Sigler, to provide him, on his request and tender of a fee therefor, with a certified copy of his "prison record, record entry in admission book, plaintiff's receipt for personal property, personal pictures, and plaintiff's finger print card," and the similar refusal of the prison physician, the defendant, George Lewis, to provide him, on like demand and tender, with a certified copy of the plaintiff's hospital record in the Penitentiary. What that element of his claim undoubtedly undertakes is to declare a violation by those defendants of Section 25–1280, R.R.S.Neb.1943, 1961 Cumulative Supplement, which provides, *inter alia:*

> "Every state, county or political subdivision officer having the custody of *a public record* or writing is bound to *give* any person on demand a certified copy thereof on payment of the legal fees therefor." (Emphasis added.)

It is true that, by Section 83–408, R.R.S.Neb.1943, Reissue of 1958, it is provided, in respect of the Penitentiary, that:

> "All books, accounts, documents, registers and reports shall be deemed *public property,* and the warden shall preserve at least one copy of each." (Emphasis added.)

It has never been judicially determined that the items mentioned in Section 83–408, supra, are "a public record" within the mandatory bestowal provided by Section 25–1280, supra, and this writer hereof is of the opinion that it will not be so determined. What the plaintiff allegedly demanded was a certified copy of the intramural files of the state's major correctional institution. And along with some probably insignificant material, plaintiff asserts that he demanded copies of his own "personal pictures (including any taken in the prison) and finger print card." It is hardly to be supposed that prison authorities are required to make available for extrainstitutional circulation matters of that nature.

 The plaintiff repeatedly asserts that his trial on November 21, 1961 was held "in absentia." He thereby evokes the historic horror of the Court of Star Chamber, and the summary justice of some modern tyrannies. But two matters are made quite clear elsewhere in his pleading. And the court files to which he refers confirm them. What occurred on that date was not the entire trial of the plaintiff, but a supplemental session to complete a hearing in which plaintiff had participated on two successive earlier days, and the supplemental hearing had been timely ordered and set for November 21, 1960 with notice to plaintiff, who thereupon sought unsuccessfully to obtain a continuance. And the vital matter is that the District Court possessed unquestionable jurisdiction both of the subject matter of the hearing, and of the plaintiff's person. In that situation, the granting or denial of a continuance rested in the court's discretion, in the adverse exercise of which it might commit error but would nevertheless retain jurisdiction. The supplemental hearing having been set, the plaintiff did not possess the power, by motion for continuance, to nullify the setting or thwart the hearing. He absented himself from the hearing at his peril. And, if there was error in the denial of the continuance, that was matter for consideration on appellate review.

 Similarly, for determination and possible correction on review, was the inclusion in the sentence of a provision for plaintiff's commitment at hard labor. It is highly probable that such language in the sentence was erroneous. But it did not oust the trial court of jurisdiction.

 Plaintiff's contention that he twice served the sentence imposed upon him or, at least, a part of it, to the ex-

tent that he may be considered here to assert it,[19] is completely without substance. The Supreme Court granted a stay of execution of the sentence pending the determination of the proceeding in error from the judgment in which the sentence was pronounced. But the plaintiff chose not to give bond, and remained in custody. The sentence was, therefore, wholly unserved when the mandate came down. The commitment, issued thereafter, was properly issued and executed. And plaintiff was not entitled to credit against his sentence for the time he had earlier spent in the Penitentiary, in consequence of his failure to provide bond. McCormick v. State, 71 Neb. 505, 99 N.W. 237. The McCormick opinion is not cited under any mistaken impression that it arose out of a situation precisely identical with this one, but is referred to because of the instructive thought of its concluding language.

The feature mentioned in the last preceding paragraph prompts the court to refer somewhat more pointedly to the case of Rhodes v. Sigler, 172 Neb. 439, 109 N.W.2d 731. After Mr. Rhodes had been confined in the state penitentiary pursuant to the commitment issued on November 25, 1960, supra, thus for his initial period of confinement in the penitentiary, he instituted in the District Court of Lancaster County, Nebraska (within which county the penitentiary is located) a proceeding for a writ of habeas corpus to secure his release from the prison. In that proceeding, he tendered certain of the questions which he now presents to this court. The Supreme Court of Nebraska affirmed a judgment of the District Court denying the writ, and it thus ruled principally on the ground that a proceeding in habeas corpus is inappropriate as an instrument for the review of error in the proceeding out of which the commitment arose, and the further ground that the writ was being employed in an effort to interfere with the Supreme Court's then existing jurisdiction in and over Mr. Rhodes' appeal from the very sentence that underlay his confinement. Among other things, the Supreme Court in its opinion filed June 23, 1961, said:

"We think it clear that from the 21st of November 1960, when the contempt judgment was rendered, the relator (i. e. Mr. Rhodes) was subject to be taken into custody and held pending further orders of the court. Our order suspending the sentence did not suspend liability to that custody save and until the relator was admitted to bail. *Relator is now being held in custody pending the determination of error proceedings from Morrill County. He is not being held as one serving the sentence imposed in that action.* (Emphasis added.)

"It appears from this showing that the sheriff had full authority under the provisions of section 29–1001, R.R.S.1943, to hold relator in a 'secure and convenient place of confinement.' "

It has already been mentioned that in the then pending appeal from his contempt sentence, Mr. Rhodes failed to file briefs and the Supreme Court dismissed the appeal, and entered its mandate, dated October 17, 1961, which was promptly filed in the office of the clerk of the District Court of Morrill County, Nebraska, supra.

Even earlier than its ruling last mentioned, the Supreme Court of Nebraska, on April 28, 1961, in Rhodes v. Houston, 172 Neb. 177, 108 N.W.2d 807, had dismissed an appeal by Mr. Rhodes from an adverse—but not final—order of the District Court of Morrill County, Nebraska, in a habeas corpus action against the Morrill County sheriff, the present defendant, Norval Houston. That dismissal appears to have rested on the

---

19. While it must be understood that the plaintiff does advance that position in his Amended Complaint in this case, the court is quite aware that he tenders it much more directely in Case No. 01784, *(supra et infra)*, filed in this court on July 26, 1963, and now pending herein.

want of finality of the order appealed from.

On August 30, 1960, Mr. Rhodes instituted an action for false imprisonment against Albert W. Crites, Norval Houston, Maryland Casualty Company, Rush Clarke, Clarence S. Beck, and Norval E. Houston, as sheriff of Morrill County, Nebraska. Sundry motions ensued and eventually the trial court sustained a material part of a motion to make more definite and certain the petition in that action. The motion was not complied with, and the trial court, thereupon, dismissed the case. Mr. Rhodes appealed; and the Supreme Court of Nebraska affirmed on March 9, 1962 in Rhodes v. Crites, 173 Neb. 501, 113 N.W.2d 611. The opinion interestingly discloses the origin of the claim there in litigation to be common with the source of this case. And while the ruling is premised on a very obviously correct view of a point of Nebraska practice, it also previsions, interestingly, much of the bearing of Mr. Rhodes in his litigation in this court.

His "litigation in this court," narrowly defined, includes Rhodes v. Houston, D. C., 202 F.Supp. 624, aff'd 309 F.2d 959, cert. den. 372 U.S. 909, 83 S.Ct. 724, 9 L.Ed.2d 719; this action, and Rhodes v. Van Steenberg, Case No. 01784, filed July 26, 1963, in which he seeks judgment for four million two hundred thousand dollars as actual damages, and a like sum as punitive damages, upon a claim based essentially upon the factual setting of his amended complaint herein, *parce detorta.*

But beyond that, he is counsel of record in Case No. 01808, James v. Henkle, in which the plaintiff prays for damages in the sum of twenty thousand dollars against the Clerk of the District Court of Cheyenne County, Nebraska, for the alleged refusal of the clerk to furnish that plaintiff with a certified copy of the commitment of Mr. Rhodes initially issued by the clerk of the District Court of Morrill County, Nebraska, in case No. 4819 in that court, of which a copy was allegedly attached to a sheriff's return

to writ of habeas corpus issued out of the District Court of Cheyenne County, Nebraska where, under such commitment, Mr. Rhodes was briefly—and quite mysteriously—in the custody of the sheriff of Cheyenne County, Nebraska. And, though not formally of counsel, he has exhibited an active interest in the case here of Edmondson v. Henkle, case No. 01765, in which Edmondson seeks to obtain a judgment against the defendant, Henkle, in the sum of two hundred thousand dollars, for the clerk's refusal to provide Edmondson with a certified copy of the same commitment. And there is an incongruity in Mr. Rhodes' interest in the suit of Edmondson last mentioned. For, still another case pending here discloses that Mr. Rhodes presently has pending in the United States District Court for the District of Kansas (at Topeka) a civil action to recover against Edmondson, a former guard in the Nebraska State Penitentiary, judgment for many millions of dollars for alleged wrongs to Mr. Rhodes incident to his imprisonment, of which he is now complaining here.

The foregoing history and identification of related—if not identical—litigation has not by the court been allowed to control the course of any ruling by this court. But it—and, incidentally, more suits in other courts of a comparable and related nature—have presented, and do present, an unattractive picture.

 Respectful consideration has been accorded to the plaintiff's pleaded criticism of his treatment during his confinement in the Nebraska State Penitentiary. But it is not believed that he sets out a claim in that behalf on which relief can be granted. He does, indeed, charge that he was subjected to confinement within the institution, to intramural restrictions, and discipline of an annoying nature, and to institutional punitive treatment. But, by definition, a state penal institution is not an attractive residential area. Its administration should be just, understanding, rational and tolerant. But it must be or-

derly, firm and inflexible. It is true that actionable abuse is occasionally visited upon prisoners in such institutions; and for it the law allows redress. But no such injustice is disclosed in the plaintiff's pleading now before the court.

While the *ad damnum* averment, and the prayer of the amended complaint have been quoted, supra, and disclose positions of the plaintiff which are vulnerable, including his allegation, as an element of damage, of his deprivation in Case No. 01322 in Rhodes v. Houston, supra, of a large judgment which he would have obtained as a result of a verdict through a jury trial in that case, and his insistence upon the recovery of punitive damages, those factors are not accorded any significance in the court's arrival at its present ruling.

An order and judgment is being made and given under this date, denying and overruling the request of the defendant, Robert A. Nelson in his Motion to Dismiss (filing 26) for the striking of paragraphs XIX, XXI and XXIII of the amended complaint; granting and sustaining the several Motions to Dismiss (filings 26, 27, 28 and 29); dismissing the amended complaint (filing 25), and the claim therein of the plaintiff, and this action; and assessing the costs of this action against the plaintiff, Paul Rhodes, and directing their taxation according to law.

## CORRECTIVE AMENDMENT OF MEMORANDUM

Upon reexamination of the original court file in Case No. 4772A, in the District Court of Morrill County, Nebraska, this court now withdraws from its memorandum filed herein on December 3, 1963 (filing 32) the following language appearing on page 97 thereof, viz.:

"On November 13, 1959, Mr. Rhodes appeared in open court, the defendant herein, Albert W. Crites,[13] presiding as District Judge, and on the reading to him of the complaint, demanded a preliminary hearing, which Judge Crites then set for De-

cember 4, 1959. Bond was then fixed at one thousand dollars."

And the court substitutes therefor the following language, viz.:

"In a journal entry filed in Case No. 4772A, it is recited that on the 13rd (sic) day of November, 1959, Mr. Rhodes appeared in open court, the defendant Albert W. Crites[13] presiding as District Judge, and on the reading to him of the complaint demanded a preliminary hearing which Judge Crites then set for December 4, 1959. Mr. Rhodes, the defendant in that action was, thereupon, released on his own recognizance. The recital of November 13, 1959 as the date of the appearance thus reflected seems manifestly to be in error, for that date was some eight days before the Complaint in that action was filed, and seven days before it was verified by the Attorney General of Nebraska."

By way of an explanatory observation, the writer hereof declares that, in the course of a reexamination (incident to the preparation of a ruling in Case No. 01784, Rhodes v. Van Steenberg et al., now pending herein) of the journal entry in Case No. 4772A, in the District Court of Morrill County, Nebraska, preserving the record both of the initial appearance in court and of the preliminary hearing of Mr. Rhodes, the writer hereof observed the inaccuracy of his own original reflection in the memorandum herein (filing 32), of the substance of the journal entry in Case No. 4772A, in the District Court of Morrill County, Nebraska, insofar as it dealt with such initial appearance. The inaccuracy was two fold. The writer originally accepted as correct the designation of November 13, 1959 as the date of such first appearance, despite obvious doubt respecting the accuracy of the recital in the journal entry of such date, supra. And the journal entry unquestionably shows that Mr. Rhodes was then released on his own recognizance. It is thought that the correction should be made. That is now undertaken.

It is further observed that the alteration now made has no possible bearing upon the ruling announced in the memorandum. It has to do only with an item of preliminary detail.